**SHENWICK & ASSOCIATES**
122 EAST 42ND STREET, SUITE 620
NEW YORK, NY 10168
TELEPHONE: (212) 541-6224
FAX: (646) 218-4600
CELL: (917) 363-3391
Email: jshenwick@gmail.com
Website: http://sites.google.com/site/jshenwick
Blog: http://shenwick.blogspot.com

January 10, 2019

**Via e-mail to** howard@summacapital.com
Howard Schulder, Esq.
President
Summa Capital Corp.
Empire State Building
350 Fifth Avenue, Suite 7612
New York, NY 10118

Re:    In re Bagbag, Case No. 08-12667-mew, United States Bankruptcy Court
for the Southern District of New York (the "Bankruptcy Court")

Dear Howard,

This law firm represents Boaz Bagbag (the "Debtor").  The Debtor has indicated that he was recently contacted regarding the payment of a judgment entered on June 10, 2010 that your company, Summa Capital Corp. ("Summa") obtained against the Debtor in the above–referenced bankruptcy case.  The Debtor's position is that Summa's judgment was fully satisfied through the sale of Pace Product Solutions, Inc. ("Pace")'s inventory and the collection of its accounts receivable, and that no monies are due and owing to Summa from the Debtor, notwithstanding the judgment.

It should be noted that: (1) the Debtor did not receive notice of the auction pursuant to NY Uniform Commercial Code ("UCC") § 9-611 (which is not waivable prior to default pursuant to NY UCC § 9-624(a); (2) the auction was not held in a commercially reasonable manner; (3) the Debtor alleges that Summa sold Pace's inventory and did not account for its sales in offsetting the judgment against him; (3) the auctioneer and Summa did not prepare an accounting of the auction sale as required by a stipulation and foreclosure order so ordered by the Bankruptcy Court or identify the amount of monies generated by the sale of Pace's inventory; and (4) since the sale of Pace's inventory and collection of its accounts receivable should have generated sufficient monies to pay the monies due Summa, no monies are due or owing from the Debtor to Summa.

This law firm has reviewed the files and Pacer filings for the Debtor's and Pace's bankruptcy filings, and we believe that no monies are owed by the Debtor to Summa.

With respect to another creditor, this law firm made a motion to reopen the Debtor's bankruptcy case, which was entered on June 6, 2018 [Doc. No. 58], and if this matter cannot be resolved (with Summa providing the Debtor with a release) within ten (10) days from the date of this letter, we will commence an adversary proceeding against Summa for proposed findings of fact and conclusions of law: (1) ordering Summa to provide a full accounting of its claim against the Debtor and any offsetting amounts collected from Pace and Worldwide Flash Auto Parts, Inc. ("Flash")'s inventory and accounts receivable, including, but not limited to, the proceeds from Summa's public auction of Pace's assets on Oct. 16, 2008; (2) for a declaratory judgment that there is a rebuttable presumption that Summa's public auction of Pace's assets was not held in a commercially reasonable manner; (3) for a declaratory judgment that since there is a rebuttable presumption that the auction was not held in a commercially reasonable manner, there is a rebuttable presumption that no monies are due or owing from Debtor to Summa; (4) issuing an injunction barring Summa's collection of its judgment against the Debtor until it can successfully rebut the presumption that the public auction was not held in a commercially reasonable manner in the Bankruptcy Court or a New York court of competent jurisdiction; and (5) authorizing discovery of Summa's loans to Pace, the value of Pace's inventory and accounts receivable and Summa's disposition of Pace's assets.

For your review, attached please find a draft of a Summons and Complaint by the Debtor against Summa and an affidavit by the Debtor. Your attention to this matter is appreciated.

Sincerely,
/s/ James H. Shenwick

Attachments

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

In re                             Chapter 7
                                      Case No. 08-12667-mkv

     BOAZ BAGBAG,

                  Debtor.

-----------------------------------------X

## AFFIDAVIT

STATE OF NEW YORK
COUNTY OF NEW YORK

      BEFORE ME, the undersigned authority, personally appeared Boaz Bagbag, who being by me first duly sworn, on oath says:

(1)     I am currently 55 years old;

(2)     I was born in Israel and emigrated to the United States from Israel in 1992. Although I completed high school, I was not a strong student in languages; therefore, at the time of the events described herein, my proficiency in English and my ability to read and write English was limited, as was my understanding of bankruptcy law and how the American legal system works;

(3)     Furthermore, I had no formal college or university education;

(4)     After I immigrated to the United States, I began to work in the auto parts industry;

(5)     On June 14, 2005, I incorporated Pace Product Solutions, Inc. ("Pace"), a New York domestic business corporation that did business in Yonkers, New York. I was the chief executive officer and majority shareholder of Pace;

(6)     Pace was a reseller and distributor of auto parts, with a principal place of business in Yonkers, New York;

(7)     On or about January 10, 2006, Summa Capital Corp. ("Summa") and Pace entered into a commercial financing arrangement by which Summa made working capital advances to Pace that were secured by Pace's inventory and accounts receivable, which were guaranteed by me;

(8)     Under the terms of the financing agreement and revisions thereto, Summa would lend up to 80% of Pace's outstanding accounts receivable and up to 25% of Pace's inventory;

(9)     Payments were timely made under the financing agreement until approximately March 2008;

(10)    In March 2008, as the country was entering a recession, Pace had difficulty making payments to Summa;

(11)    At that time, Summa had apparently lent $357,021.82 to Pace based on the inventory of Worldwide Flash Auto Parts, Inc. ("Flash") (a Pace subsidiary), indicating that Flash had

1

$1,190,072 in inventory;

(12) The books and records of Pace also indicated that Pace itself had $1,459,508 in inventory;

(13) With respect to accounts receivable, the records indicated that Pace had $461,254 in receivables and that Flash had $614,228 in receivables;

(14) On or about March 20, 2008, Summa commenced an action against Pace in the Commercial Division of the Supreme Court of the State of New York, Westchester County, captioned Summa Capital Corp. v. Pace Product Solutions, Inc., No. 5998/2008, to recover the monies loaned by Summa to Pace;

(15) Eventually, the Westchester court issued an order that effectively barred Pace from doing any further business until Summa was repaid;

(16) At the time, Pace and Flash had approximately $2.5 million in combined inventory and more than $1 million in combined accounts receivable;

(17) Based on the recession and the Westchester court's order, I was forced to file for both personal and business bankruptcy. I was also separated from my wife, pending a divorce and trying to support two young children;

(18) I hired Daniel M. Katzner, Esq. ("Katzner"), a young, relatively inexperienced lawyer with a small storefront office in the Bronx to assist in both Pace's and my individual bankruptcy;

(19) Pace's bankruptcy petition, which was prepared by Katzner and dated July 10, 2008, indicated that Summa had a claim for "$1,500,000 (Security interest in inventory valued at $1,000,000)";

(20) This $1 million inventory figure was significantly incorrect;

(21) On July 24, 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") issued an order barring Pace and its officers, directors, and employees, including me, from entering its business premises in Yonkers;

(22) In September 2008, in scheduling Pace's assets, Katzner reported $315,906 in accounts receivable and $1,609,024 in inventory;

(23) These figures were also significantly incorrect;

(24) The schedule was signed (under penalty of perjury) as "/s/ Boaz Bagbag";

(25) I did not sign this schedule and I did not authorize or approve a conformed signature. I also did not authorize Katzner to file that document with the Bankruptcy Court;

(26) Further, had I known that the schedule reported barely $2 million in Pace assets, I would not have signed or authorized the filing of that schedule;

(27) On July 31, 2008, Pace's chapter 7 bankruptcy trustee entered into a stipulation with Summa, allowing Summa to take possession of all of Pace's inventory and collect on the accounts receivable;

(28) For the three days after Summa obtained the keys to Pace's premises, I parked out front of the premises in Yonkers and observed Summa employees and others removing Pace inventory from the premises;

(29) Upon information and belief, Summa continued to sell Pace's inventory until October 10, 2008;

(30) Finally, in mid–October 2008, more than two and a half months after Summa took control of Pace's inventory, an auction was supposedly held, **which I never received notice of**;

2

(31) With respect to notice of the auction, paragraph 8 of the Initial Financing Agreement between Pace and Summa, which I guaranteed, provides that: "[Summa] shall have in addition to all other rights provided herein, the rights and remedies of a secured party under the Uniform Commercial Code of the State of New York, and further, **[Summa] may, without demand and without advertisement or notice, all of which [Pace waives],** at any time or times, sell and deliver any or all Receivables and any or all other security and collateral held by or for you at public or private sale, for cash, upon credit or otherwise, at such prices and upon such terms as [Summa] deems advisable, at [Summa's] sole discretion. **Any requirement of reasonable notice shall be met if such notice is mailed prepaid to [Pace] at our address as set forth herein at least five days before the time of sale or other disposition**" (emphasis added);

(32) The above language may indicate why I did not get notice of the auction; the Summa Financing Agreement provides that Summa may without advertisement or notice sell the inventory, although I understand that such terms violate New York State Uniform Commercial Code § 9-624(a). Upon information and belief no affidavit of service or certificate of service was filed by Summa with the Bankruptcy Court, regarding service of notice of the auction to me.

(33) The auctioneer reports having sold all of Pace's physical assets to MEP Auto, Inc. ("MEP Auto") on October 16, 2008, with a description as follows: "Bulk bid for all assets consisting of **inventory pallet racking**, metal shelving, ladders, carts Clark Forklift, office furniture, office equipment, 1992 Chevrolet Suburban AstroEXT VIN 1GNDM19Z4NB217325 and 1994 Dodge/Chrysler Utility RAM 350 VIN 285WB35Y8RK134215" (emphasis added);

(34) As an experienced businessman with over 20 years of experience in the automotive and auto parts business, I know that the term "**inventory pallet racking**" refers to racks that hold parts and inventory, not the inventory itself;

(35) Upon information and belief, no accounting was ever done by Summa or the Bankruptcy Trustee detailing how much inventory Summa took control of and how much the inventory was sold for;

(36) Based upon my 20 years of experience in the automotive and auto parts industry and simple common sense, car parts are highly marketable and if MEP Auto was the only bidder, then the auction was improperly conducted;

(37) **Subtracting supposed fees and expenses, the auctioneer claimed only $411,848 in net proceeds from the auction on $2.5 million in combined inventory (Pace and Flash), with a net recovery of 16%;**

(38) **With respect to the more than $1 million in accounts receivable, Summa ultimately claimed that (as of January 29, 2009) it had only collected $65,969;**

(39) Until very recently, I was entirely unaware of these low figures and the low recovery claimed by Summa. Given that I understood that Summa had a claim for $1.5 million and that Pace had millions in inventory and accounts receivable, I believed that Summa had been paid in full. Indeed, I understood that Summa had profited from my bankruptcy, collecting more than it was owed;

(40) **The July 31, 2008 stipulation between Summa and Pace's chapter 7 trustee required Summa to "provide the Trustee with (a) a written accounting of its sale and/or other disposition of the Collateral [inventory and accounts receivable] not later than sixty**

3

(60) days after the completion of such sale or other disposition and (b) quarterly reports of all of Summa's collection of the Debtor's accounts and accounts receivable";

(41) Upon information and belief, no such accountings were ever provided or filed;

(42) Almost two years after Summa took possession of Pace's assets, and more than a year and a half after Summa's auction of Pace's assets, on June 4, 2010, Katzner and Summa entered into a stipulation in my personal bankruptcy case;

(43) Under the terms of the stipulation, Katzner stated that "[I] hereby [agree] to except from discharge and dischargeability Claim No. 13, filed on June 17, 2009";

(44) Katzner further stipulated to the entry "of a judgment [against me and] in favor of Summa in the amount of $1,212,062.40";

(45) According to Katzner's stipulation, Summa's claim was for $1,697,183.91 and only $485,121.54 had been collected, leaving $1,212,062.40 uncollected;

(46) Katzner, alone, without my input, decided that Summa's claim against me were not dischargeable, although discharging debts and providing a **"fresh start"** is why I filed my chapter 7 Bankruptcy Petition and the goal of chapter 7 bankruptcy;

(47) The stipulation to the judgment against me and in favor of Summa was signed by Katzner. It was not signed by me. Because I was unaware of the stipulation or its terms, I did not and could not raise any objection at that time;

(48) On June 8, 2010, the Bankruptcy Court signed an order granting judgment, based on the stipulation, against me and in favor of Summa;

(49) I never authorized an agreement to enter a judgment against me and in favor of Summa for $1.2 million. Not only did I not authorize the judgment, I would not have done so, because I knew that Summa had been fully repaid through the sale of Pace's inventory and the collection of the accounts receivable;

(50) I never engaged in any conduct that suggested Katzner had authority to bind me to this stipulation. I did not participate in any discussions with Summa concerning any proposed settlement, or appear at any court proceedings where such a settlement was discussed;

(51) The stipulation was entered on June 9, 2010 and the judgment against me and in favor of Summa was entered on June 10, 2010;

(52) The certificate of service indicates that the judgment was sent to an address at which I no longer resided, and I never received notice of the judgment against me;

(53) The order of final decree was entered in October 2011 in the Pace bankruptcy case and the order of discharge and final decree was entered in my personal bankruptcy in February 2012;

(54) My understanding was that the nightmare of bankruptcy had concluded and that I could resume my life with the "fresh start" offered by the Bankruptcy Code;

(55) **Almost seven years later, during the summer of 2018, I received a notice from an attorney. It indicated that Summa was attempting to collect on a debt from me**;

(56) I was quite surprised by this notice, because I believed that I did not owe any money to Summa;

(57) I retained counsel to investigate the matter and was shocked to learn that Katzner had stipulated to the entry of a judgment against me and in favor of Summa. I never knew about the 2010 stipulation and judgment until that time;

(58) As noted above, I never authorized an agreement to enter a judgment against me and in

4

STATE OF NEW YORK
COUNTY OF NEW YORK

On the _10_ day of January in the year 2019 before me, the undersigned, personally appeared Boaz Bagbag, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____

Notary Public

Printed Name: _Roma Jaipaul_

My Commission Expires:

_5/26/2019_

favor of Summa for $1.2 million. Indeed, I would not have done so, as I knew that Summa had been fully repaid through the sale of Pace's inventory and the collection of the accounts receivable;

(59)   When my counsel contacted Summa, they were was unwilling to provide records to substantiate their claim against me;

(60)   Pace's chapter 7 trustee, to whom Summa was required to provide a written accounting, has stated that his records are "in storage," and I have to date not been provided with those records;

(61)   When my counsel contacted Katzner to discuss the judgment, the valuation of the Pace and Flash inventory and accounts receivable and an accounting of the sale of the Pace and Flash inventory, he indicated that he doesn't recall what happened or how and why he managed to stipulate to a $1.2 million judgment;

(62)   Common sense and New York state law provide that a debt cannot be collected or paid twice, and the facts of this case clearly demonstrate that all monies due Summa were or should have been fully paid through the sale of the Pace and Flash inventory and the collection of the Pace accounts receivable;

(63)   After filing for chapter 7 personal bankruptcy almost nine years ago, paying much money to lawyers and after much time, effort, stress and aggravation, I do not have the "fresh start" which I am entitled to under chapter 7 of the Bankruptcy Code because Summa is pursuing me for a debt which I believe was fully paid through the sale of Pace and Flash inventory and the collection of Pace's accounts receivable or otherwise discharged in my chapter 7 bankruptcy filing.

Dated: January 10th, 2019

_____
Boaz Bagbag

5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 7 |
| BOAZ BAGBAG, | |
| Debtor. | Case No. 08-12667 (MEW) |

---

| | |
|---|---|
| BOAZ BAGBAG, | |
| Plaintiff, | Adversary Proceeding No. |
| -against- | |
| SUMMA CAPITAL CORP., | |
| Defendant. | |

---

**COMPLAINT FOR PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW: (1) ORDERING THE DEFENDANT TO PROVIDE A FULL ACCOUNTING OF ITS CLAIM AGAINST THE DEBTOR AND ANY OFFSETTING AMOUNTS COLLECTED FROM PACE AND FLASH INVENTORY AND ACCOUNTS RECEIVABLE, INCLUDING, BUT NOT LIMITED TO, THE PROCEEDS FROM THE DEFENDANT'S PUBLIC AUCTION OF PACE'S ASSETS ON OCT. 16, 2008; (2) FOR A DECLARATORY JUDGMENT THAT THERE IS A REBUTTABLE PRESUMPTION THAT THE DEFENDANT'S PUBLIC AUCTION OF PACE'S ASSETS WAS NOT HELD IN A COMMERCIALLY REASONABLE MANNER; (3) FOR A DECLARATORY JUDGMENT THAT NO MONIES ARE DUE OR OWING FROM DEBTOR TO DEFENDANT AND ISSUING AN INJUNCTION BARRING THE DEFENDANT'S COLLECTION OF ITS JUDGMENT AGAINST THE DEBTOR; AND (4) AUTHORIZING DISCOVERY OF THE DEFENDANT'S LOANS TO PACE, THE VALUE OF PACE'S INVENTORY AND ACCOUNTS RECEIVABLE AND THE DEFENDANT'S DISPOSITION OF PACE'S ASSETS PURSUANT TO § 105 OF THE BANKRUPTCY CODE AND RULE 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Plaintiff and Debtor Boaz Bagbag (the "Debtor"), as and for his Complaint against

1

Defendant Summa Capital Corp. (the "Defendant"), respectfully alleges:

## JURISDICTION

1. On July 10, 2008, the Debtor filed a voluntary petition (the "Petition") for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.

2. This Complaint is timely because this Court has discretion under Rule 60(d) of the Federal Rules of Civil Procedure to entertain an independent action to relieve a party from a judgment and to set aside a judgment for fraud upon the court.

3. This is an adversary proceeding in which the Debtor is seeking proposed findings of fact and conclusions of law: (1) ordering the Defendant to provide a full accounting of its claim against the Debtor and any offsetting amounts collected from Pace Product Solutions, Inc. ("Pace")'s and Worldwide Flash Auto Parts, Inc. ("Flash")'s inventory and accounts receivable, including, but not limited to, the proceeds from the Defendant's public auction of Pace's assets on Oct. 16, 2008; (2) for a declaratory judgment that there is a rebuttable presumption that the Defendant's public auction of Pace's assets was not held in a commercially reasonable manner; (3) for a declaratory judgment that no monies are due or owing from Debtor to Defendant; (4) issuing an injunction barring the Defendant's collection of its judgment against the Debtor unless and until it can successfully rebut the presumption that the public auction was not held in a commercially reasonable manner in this Court or a New York court of competent jurisdiction; and (5) authorizing discovery of the Defendant's loans to Pace, the value of Pace's inventory and accounts receivable and the Defendant's disposition of Pace's assets.

4. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §

1334, § 105 of the Bankruptcy Code and Rule 60 of the Federal Rules of Civil

Procedure (as modified by Rule 9024 of the Federal Rules of Bankruptcy

Procedure).

5. This case is a non–core proceeding pursuant to 28 U.S.C. § 157(c)(1).

## PARTIES

6. Plaintiff is the Debtor in the above–captioned case.

7. Defendant asserts that Plaintiff is a judgment debtor of the Defendant.

8. Defendant is a New York domestic business corporation with a principal executive

office at 350 Fifth Avenue, New York, NY 10118.

## PACE PRODUCT SOLUTIONS, INC.

9. On or about June 14, 2005, the Debtor formed Pace, a New York domestic

business corporation with a principal executive office at 548 West 48th Street, New

York, NY 10036. Pace was a reseller and distributor of automobile parts.

10. On or about January 10, 2006, the Defendant and Pace entered into a commercial

financing arrangement (the "Initial Financing Agreement") by which the Defendant

made working capital advances to Pace that were secured by Pace's accounts

receivable. Simultaneously, Pace executed two security agreements granting the

Defendant security interests in its inventory and equipment and the Debtor executed

a guaranty of Pace's debts to the Defendant.

11. Over the course of their business relationship, the Defendant increased Pace's

credit line and allowed Pace to borrow additional monies based on a percentage of

its inventory. Copies of the Initial Financing Agreement and letters from the

Defendant revising the terms of the Initial Financing Agreement are attached

hereto as Exhibit A.

12. Paragraph 8 of the Initial Financing Agreement provides that:

> [Summa] shall have in addition to all other rights provided herein, the rights and remedies of a secured party under the Uniform Commercial Code of the State of New York, and further, **[Summa] may, without demand and without advertisement or notice, all of which [Pace waives],** at any time or times, sell and deliver any or all Receivables and any or all other security and collateral held by or for you at public or private sale, for cash, upon credit or otherwise, at such prices and upon such terms as [Summa] deems advisable, at [Summa's] sole discretion. Any requirement of reasonable notice shall be met if such notice is mailed prepaid to [Pace] at our address as set forth herein at least five days before the time of sale or other disposition.

13. Pursuant to the terms of the Initial Financing Agreement and amendments thereto, Pace was eventually able to borrow up to 80% of its net receivables up to a maximum of $1,500,000 and up to 25% of its inventory.

14. In March 2008, Pace started having difficulty making payments to the Defendant and on or about March 20, 2008, the Defendant commenced an action against Pace in the Commercial Division of the Supreme Court of the State of New York, Westchester County, captioned Summa Capital Corp. v. Pace Product Solutions, Inc., No. 5998/2008.

15. The Westchester County Supreme Court issued an order that effectively barred Pace from continuing its business operations until it fully repaid the Defendant.

16. As a result, the Debtor felt compelled to seek bankruptcy protection for Pace and himself individually.

17. The Debtor retained a young and inexperienced attorney, Daniel M. Katzner, Esq. ("Katzner") as bankruptcy counsel for Pace and himself.

18. Pace and the Debtor both filed for bankruptcy in the Court on July 10, 2008 (the "Petition Date"). Pace's case number was 08-12666-mg. Pace's case was initially filed as a case under chapter 11 of the Bankruptcy Code but was subsequently converted to a case under chapter 7 of the Bankruptcy Code on July 24, 2008.

19. On July 16, 2008, the Defendant filed a motion for relief from the automatic stay in the Pace bankruptcy case [Doc. No. 3].

20. On July 31, 2008, this Court "so ordered" a stipulation and order modifying the automatic stay to permit the Defendant to foreclose on its Collateral under the Initial Financing Agreement (the "Summa Foreclosure Order") [Doc. No. 31], a copy of which is attached hereto as Exhibit B.

21. The Summa Foreclosure Order provides that **"Summa shall provide the Trustee with (a) a written accounting of its sale and/or other disposition of the Collateral not later than sixty (60) days after the completion of such sale or other disposition and (b) quarterly reports of all of Summa's collection of the Debtor's accounts and accounts receivable"** (at ¶ 7).

22. **Upon an extensive review of the Pace docket report, it appears that no written accounting of the disposition of Pace's Collateral or reports of the Defendant's collection of Pace's accounts and accounts receivable was ever provided to chapter 7 trustee Albert Togut, Esq., Togut Segal & Segal, LLP.**

23. At the time of the Summa Foreclosure Order, Pace's records indicated that it had approximately $1,459,508 in inventory and $461,254 in net receivables and its wholly owned subsidiary Flash had approximately $1,190,072 in inventory and $614,228 in net receivables, for a combined total of $2,649,580 in inventory and $1,075,482 in net receivables.

24. After the Defendant obtained the keys to Pace's premises, the Debtor sat in a parked car in front of Pace's premises for three days and observed the removal of the Debtor's property (see Debtor's Affidavit at ¶ 28).

25. On Sept. 16, 2008, Katzner filed Pace's schedules [Doc. No. 51], which indicated that

Pace had general customer accounts receivable of $315.906 (Schedule B, line 16) and inventory consisting of miscellaneous auto parts with a value (at cost) of $1,609,024 (Schedule B, line 30).

26. Pace's bankruptcy schedules, as prepared by Katzner were inaccurate (see Debtor's Affidavit at ¶¶ 20 and 23).

27. On Oct. 16, 2008, the Defendant held a public auction of Pace's inventory and equipment, which was sold to one buyer (MEP Auto, Inc.) for $525,000. A copy of the auctioneer's invoice is attached hereto as Exhibit C. **However, Pace and the Debtor never received notice of the Defendant's public auction**.

28. The net proceeds of the auction were allegedly $411,847.93. A copy of the remittance report is attached hereto as Exhibit D.

29. It strains credulity that $2,649,580 of car parts inventory netted $411,847.93 (16% of the value of the inventory) at auction.

30. Moreover, the description of the assets sold at the auction is as follows: "Bulk bid for all assets consisting of **inventory pallet racking**, metal shelving, ladders, carts Clark Forklift, office furniture, office equipment, 1992 Chevrolet Suburban AstroEXT VIN 1GNDM19Z4NB217325 and 1994 Dodge/Chrysler Utility RAM 350 VIN 285WB35Y8RK134215."

31. **Inventory pallet racking is racking that was used to hold or store the inventory and is not the car parts inventory.**

32. **The description of the auction references "inventory pallet racking," but does not specifically reference Pace's inventory, which, as described above, totaled at least $2,649,580 and represented the vast majority of Pace's assets.**

33. On June 17, 2009, the Defendant filed a Proof of Claim in the instant case [Claim No. 13]

(the "Summa Proof of Claim") in the amount of $1,697,183.91, based on the Debtor's guaranty of Pace's debt as described above at ¶ 10.

34. Exhibit H to the Summa Proof of Claim (which is attached hereto as Exhibit E) is a loan status report for Pace (the "Loan Status Report"). The Loan Status Report is dated as of Mar. 13, 2008 and appears to detail four sublines of credit to Pace based on its collateral and that of its wholly owned subsidiary Worldwide Flash Auto Parts, Inc. ("Flash").

35. The first subline of credit, "Loan # PAC01," appears to be based on Pace's inventory of auto parts and had a limit of $500,000. The gross/net loan amount is listed as $485,220.17.

36. The second subline of credit. "Loan # PAC02," appears to be based on Flash's net receivables and had a limit of $400,000. The gross/net loan amount is listed as $398,011.36.

37. The third subline of credit, "Loan # PAC03," appears to be based on Pace's net receivables and had a limit of $300,000. The gross/net loan amount is listed as $357,021.82.

38. The fourth and final subline of credit, "Loan # PAC10," appears to be based on Flash's inventory and had a limit of $255,000. The gross/net loan amount is listed as $255,000.

39. The grand total amount listed that Pace allegedly owed the Defendant for all sublines of credit was $1,506,253.35; however, the total amount of the figures listed above is $1,496,253.35, $10,000 less than the grand total amount on the Loan Status Report.

40. On June 9, 2010, a so ordered stipulation and order was entered in the instant case regarding the dischargeability of the Defendant's claim against the Debtor and consenting to a judgment against the Debtor and in favor of the Defendant in the amount of $1,212,062.40 (the "Summa Stipulation and Order") [Doc. No. 104].

**41. The so ordered stipulation and order was signed by Katzner and not by the Debtor.**

**42. The Debtor never authorized Katzner to have this Court enter a judgment against him and in favor of the Defendant for $1.2 million. Not only did he not authorize the judgment, he would not have done so, as he believed that the Defendant had been fully repaid through its sale of Pace's inventory and collection of Pace's accounts receivable** (see Debtor's Affidavit at ¶ 49).

**43. The Debtor never engaged in any conduct that suggested Katzner had authority to enter into the Summa Stipulation and Order. The Debtor did not participate in any discussions with the Defendant concerning any proposed settlement or appear at any court proceedings where such a settlement was discussed (see Debtor's Affidavit at ¶ 50).**

44. On June 10, 2010, the Defendant's judgment against the Debtor in the amount of $1,212,062.40 was entered in the instant case [Doc. No. 105].

45. Also on June 10, 2010, this Court entered a certificate of service in the instant case of the Defendant's judgment against the Debtor via first–class mail to 304 East 78th Street, Apt. 5F, New York, NY 10021 [Doc. No. 106].

**46. However, the certificate of service was mailed to an address that the Debtor no longer resided at** (see Debtor's Affidavit at ¶ 52**).**

## COUNT I – PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW FOR AN ACCOUNTING UNDER § 105(A) OF THE BANKRUPTCY CODE

45. The Debtor repeats and re-alleges the allegations set forth in paragraphs 1 through 44 of this Complaint as if set forth at length herein.

46. Bankruptcy Code § 105(a) provides, in relevant part, that:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte,

8

taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

47. Since Summa failed to comply with the provisions of the Summa Foreclosure

Order regarding providing Pace's chapter 7 trustee with a written accounting of the

public auction of the Collateral or quarterly reports of the Defendant's collection of

Pace's accounts and accounts receivable, in the interest of equity, this Court should

enter proposed findings of fact and conclusions of law ordering the Defendant to

provide a full accounting of its claim against the Debtor and any offsetting amounts

collected from Pace's inventory and accounts receivable, including, but not limited

to, the proceeds from the Defendant's public auction of Pace's assets on Oct. 16,

2008.

**COUNT II – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW THAT SINCE THE DEFENDANT BEARS THE BURDEN OF PROOF THAT ITS AUCTION OF PACE'S ASSETS WAS HELD IN A COMMERCIALLY REASONABLE MANNER PURSUANT TO NY UCC ARTICLE 9, THERE IS A REBUTTABLE PRESUMPTION THAT THE DEFENDANT IS NOT ENTITLED TO PURSUE A DEFICIENCY JUDGMENT AGAINST THE DEBTOR AND FOR AN INJUNCTION AGAINST THE DEFENDANT'S COLLECTION OF THE JUDGMENT FROM THE DEBTOR**

48. The Debtor repeats and re-alleges the allegations set forth in paragraphs 1 through

47 of this Complaint as if set forth at length herein.

49. New York Uniform Commercial Code ("UCC") § 9-611

governs notification before disposition of collateral.

50. New York UCC § 9-624(a) provides that "[a] debtor or

secondary obligor may waive the right to notification of

disposition of collateral under Section 9-611 **only by an**

**agreement to that effect entered into and authenticated**

**after default.**" (emphasis added).

9

51. Since the Initial Financing Agreement was entered into prior to Pace's default, its waiver of notice provisions are void *ab initio*.

52. Furthermore, due to the low amount of the auction's net proceeds, it is highly unlikely that the Defendant's public auction of Pace's assets was conducted in a commercially reasonable manner.

53. NY UCC § 9-610(b) provides that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable."

54. NY UCC § 9-626 governs an action in which deficiency or surplus is an issue and provides that:

> [i]f the secured party's compliance is placed in issue, the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted in accordance with this part (at § 9-626(a)(2)) and that except as otherwise provided in Section 9-628, **if a secured party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in accordance with the provisions of this part relating to collection, enforcement, disposition, or acceptance, the liability of a debtor or a secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of: (A) the proceeds of the collection, enforcement, disposition, or acceptance; or (B) the amount of proceeds that would have been realize had the noncomplying secured party proceeded in accordance with the provisions of this part relating to collection, enforcement, disposition, or acceptance** (at § 9-626(a)(3)) (emphasis added)

55. Accordingly, since there is a rebuttable presumption that the auction was not conducted in a commercially reasonable manner, with no notice to the Debtor, no accounting to the

Debtor or the Bankruptcy Trustee and the unreasonably low

sale price at the auction, there is a rebuttable presumption that

the Defendant is not entitled to seek a deficiency against

Plaintiff, based on the authority of NY UCC-9-626(a)(3).

56. In <u>In re Winer,</u> 39 B.R. 504 (Bankr. S.D.N.Y. 1984), this Court

considered the objection of joint chapter 13 debtors to a bank's

claim for a deficiency judgment against them after a sale of

collateral, which the debtors contended was not held in a

commercially reasonable manner pursuant to Article 9 of the

UCC, based on the bank's failure to notice the debtors of the

public sale of the collateral and the small return from the public

sale in relation to the market value of the collateral.

57. This Court held that "[i]n an action for a deficiency that

remains after a sale of the collateral, the secured creditor is

charged with the burden of affirmatively proving the

commercial reasonableness of the sale and that proper notice

was given to the debtor" (at 509) (internal citations omitted).

58. In <u>Tese-Milner v. TPAC, LLC (In re Ticketplanet.com),</u> 313

B.R. 46 (Bankr. S.D.N.Y. 2004), chapter 7 trustee Angela Tese-

Milner commenced an adversary proceeding against the

principals of the debtor and other entities for multiple claims for

relief, including conversion.

59. Tese-Milner "challenge[d] the foreclosure and the subsequent

auction of TPAC's collateral and charge[d] that the sale was not

properly noticed and was a sham." This Court held that "[t]he Trustee may have a claim under applicable State law for failure to conduct a sale of property in a reasonable manner . . . If the auction was not conducted in accordance with applicable standards, the Trustee has her remedy, and leave is granted to the Trustee to plead a claim against the relevant parties for failure to conduct an appropriate foreclosure sale." Id. at 69.

60. Therefore, given the Defendant's failure to notice Pace or the Debtor about the public auction of Pace's assets and the unusually low proceeds of the auction (as noted above at ¶ 29, a 16% recovery on the value of Pace and its subsidiary's inventory), this Court should enter proposed findings of fact and conclusions of law that there is a rebuttable presumption that the Defendant's public auction of Pace's assets was not held in a commercially reasonable manner and enjoining the Defendant's collection of its judgment against the Debtor unless and until it can successfully rebut the presumption that the public auction was not held in a commercially reasonable manner in this Court or a New York court of competent jurisdiction.

**COUNT III- PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR A DECLARATORY JUDGMENT THAT BASED ON THE FACT THAT DEBTOR DID NOT RECEIVE NOTICE OF THE AUCTION, THAT THE AUCTION WAS NOT HELD IN A COMMERCIALLY REASONABLE MANNER, THAT THE AUCTIONEER AND DEFENDANT DID**

**NOT PREPARE AN ACCOUNTING OF THE AUCTION SALE AS
REQUIRED BY A STIPULATION SO ORDERED BY THIS COURT
OR IDENTIFY THE AMOUNT OF MONIES GENERATED BY
THE SALE OF INVENTORY AND THAT THE SALE OF THE
PACE AND FLASH INVENTORY AND THE COLLECTION OF
THE PACE ACCOUNTS RECEIVABLE SHOULD HAVE
GENERATED SUFFICIENT MONIES TO PAY THE SUMS DUE
DEFENDANT, NO MONIES ARE DUE OR OWING FROM
<u>DEBTOR TO DEFENDANT</u>**

61. The Debtor repeats and re-alleges the allegations set forth in
paragraphs 1 through 60 of this Complaint as if set forth at
length herein.

62. Pursuant to NY UCC § 9-611, Defendant was required to give Plaintiff notice of the
auction, which provision cannot be waived prior to default pursuant to UCC § 9-
624(a), and since Debtor was not given notice of the auction (see Debtor's Affidavit
at ¶¶ 30-32), there is a rebuttable presumption that the Defendant cannot seek a
deficiency judgment from the Debtor.

63. Since there is a rebuttable presumption that the auction was not
held in a commercially reasonable manner and that inventory
may have been sold that was not properly accounted for by the
auctioneer or the Defendant (see Debtor's Affidavit at ¶¶ 28
and 29), there is a rebuttable presumption that Defendant cannot
seek a deficiency judgment from the Debtor.

64. Since there is a rebuttable presumption that the auction was not
conducted in a commercially reasonable manner, and the
auctioneer and the Defendant did not prepare an accounting of
the auction sale as required by the Summa Foreclosure Order or
identify the amount of monies generated by the sale of

inventory (see Debtor's Affidavit at ¶¶ 35, 40 and 41), there is a

rebuttable presumption that Defendant cannot seek a deficiency

judgment from the Debtor.

65. Since there is a rebuttable presumption that auction was not

held in a commercially reasonable manner, and the sale of the

Pace and Flash inventory and the collection of the Pace

accounts receivable should have generated sufficient monies to

pay the sums due the Defendant, there is a rebuttable

presumption that no monies are due or owing from the Debtor

to Defendant (see Debtor's Affidavit at ¶¶ 36-39).

66. Therefore, this Court should enter proposed findings of fact and

conclusions of law that no monies are due from Debtor to

Defendant.

**COUNT IV – PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
AUTHORIZING DISCOVERY CONCERNING THE TRUE VALUE OF PACE'S
INVENTORY AND ACCOUNTS RECEIVABLE AND THE DEFENDANT'S
COLLECTION AND DISPOSAL OF PACE'S ASSETS PURSUANT TO PART VII OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND TITLE V OF THE
FEDERAL RULES OF CIVIL PROCEDURE**

67. The Debtor repeats and re-alleges the allegations set forth in paragraphs 1 through 66

of this Complaint as if set forth at length herein.

68. To resolve this adversary proceeding, the Debtor will need to conduct discovery of,

*inter alia*, the Defendant's loans to Pace, the value of Pace's inventory and accounts

receivable and the Defendant's disposition of Pace's assets.

69. Therefore, this Court should enter proposed findings of fact and conclusions of law

authoring the Debtor to conduct discovery of the Defendant's loans to Pace, the value

of Pace's inventory and accounts receivable and the Defendant's disposition of

14

Pace's assets.

**WHEREFORE**, the Debtor respectfully requests that this Court enter proposed findings of fact and conclusions of law: (1) ordering the Defendant to provide a full accounting of its claim against the Debtor and any offsetting amounts collected from Pace's and Flash's inventory and accounts receivable, including, but not limited to, the proceeds from the Defendant's public auction of Pace's assets on Oct. 16, 2008; (2) for a declaratory judgment that there is a rebuttable presumption that the Defendant's public auction of Pace's assets was not held in a commercially reasonable manner; (3) for a declaratory judgment that since the auction was not held in a commercially reasonable manner, no monies are due or owing from Debtor to Defendant; (4) issuing an injunction barring the Defendant's collection of its judgment against the Debtor until it can successfully rebut the presumption that the public auction was not held in a commercially reasonable manner in this Court or a New York court of competent jurisdiction; and (5) authorizing discovery of the Defendant's loans to Pace, the value of Pace's inventory and accounts receivable and the Defendant's disposition of Pace's assets; and granting the Debtor such other and further relief as this Court may deem just and proper.

Dated: New York, New York
January 9, 2019

/s/ James H. Shenwick
SHENWICK & ASSOCIATES
Attorneys for Debtor
122 East 42nd Street, Suite 620
New York, New York 10168
(212) 541-6224

# EXHIBIT A

# FINANCING AGREEMENT

**SUMMA CAPITAL CORP.**
**350 FIFTH AVENUE**
**NEW YORK, NY 10118**

Gentlemen:

This Agreement, effective as of the date of acceptance by you, states the terms and conditions under which you will make revolving loans to us.

1. As security for obligations (as herein defined) at any time owing by us to you or your subsidiaries, we hereby assign to you and grant to you a security interest in all of our Receivables (as herein defined) whether now existing or hereafter arising or in which we now have or may hereafter acquire any rights. The term "Receivables" means and includes accounts, contract rights, instruments, documents, chattel paper, general intangibles and all forms of obligations owing to us, all proceeds thereof and all of our rights in any merchandise which is represented thereby. From time to time, we shall provide you with schedules describing all Receivables created or acquired by us and shall execute and deliver written assignments of such Receivables to you, provided, however, that our failure to execute and deliver such schedules and/or assignments shall not affect or limit your security interest or other rights in and to Receivables. Together with each schedule, we shall furnish copies of customers' invoices or the equivalent, and original shipping or delivery receipts for all merchandise sold or appropriate evidence of performance of a service and we warrant the genuineness thereof. We further warrant that all Receivables are and will be bona fide existing obligations created by the sale and delivery of merchandise or the rendition of services to customers in the ordinary course of business, free of liens, encumbrances and security interests and unconditionally owed to us without defense, offset or counterclaims.

2. You will lend to us at your discretion up to EIGHTY per cent (80%) of the net amount of Receivables which you deem acceptable, up to a maximum amount outstanding at any time of $150,000, and you will credit the amount thereof to our account. The balance of said net amount, less any moneys remitted, paid or otherwise advanced by you to or for the account of the undersigned, including any amounts which you may be obligated to pay in the future, and less the compensation specified in Paragraph "3", shall be remitted to us when all said Receivables shall be collected. You or your designee may notify customers or account debtors at any time that Receivables have been assigned to you or of your security interest therein, collect them directly and charge the collection costs and expenses to our account but, unless and until you do so or give us other instructions, we shall make collection of all Receivables for you, receive in trust all payments thereon as your trustee and immediately deliver them to you in their original form. After allowing six days for collection of checks and other instruments, you will credit (conditional upon final collection) all such payments to our account.

3. Interest will be paid to you at the rate of PRIME PLUS 7.00% of the net upon any balance of our account owing to you at the close of each day and will be due and payable to you at the close of each month. In the event that New York City prime rate prevailing on the effective date hereof is subsequently increased, then an equivalent increase will be made in the rate of interest which will be charged to us. You will account monthly and such monthly accounting will be fully binding on us unless we give you written notice of the exceptions within 30 days. We agree to pay you a minimum facility servicing fee of $1,500.00 Dollars (the "Facility Fee"). The Facility Fee shall be in addition to all other costs and expenses provided for herein.

4. If any warranty is breached as to any Receivable, or any Receivable is not paid by the customer or account debtor within 90 DAYS days from the date of the invoice, or the customer or account debtor disputes liability or makes any claim with respect thereto, or a petition in bankruptcy or other application for relief under the Bankruptcy Act or any other insolvency law, is filed with respect to the customer or account debtor or the customer or account debtor assigns for the benefit of creditors, becomes insolvent, fails, suspends or goes out of business, then you may deem unacceptable any or all Receivables owing by that customer or account debtor and we shall pay you promptly the amount thereof; but you shall retain your title to all Receivables, acceptable and unacceptable and/or your security interest therein until all Obligations have been fully satisfied. Any merchandise which is returned by a customer or account debtor or otherwise recovered shall be set aside, marked with your name and held by us as your trustee, and shall remain a part of your security. We shall notify you promptly of all returns and recoveries and on request deliver the merchandise to you. We shall also notify you promptly of all disputes and claims and settle or adjust them at no expense to you, but no discount, credit or allowance shall be granted to any customer or account debtor and no returns of merchandise shall be accepted by us without your consent. You may, at all times, settle or adjust disputes and claims directly with customers or account debtors for amounts and upon terms which you consider advisable, and in all cases you will credit our account with only the net amounts received by you in payment of Receivables, after deducting all costs and legal expenses.

5. At sums at any time standing to our credit on your books and all of our property at any time in your possession, or upon or in which you have a lien or security interest shall be security for all Obligations. The term "Obligations" (as used in this Agreement) means and includes all loans, advances, debts, liabilities, obligations, guarantees, covenants and duties owing by us to you or your subsidiaries, of every kind and description (whether or not evidenced by any note or other instrument and whether or not for the payment of money), direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, including without limitation, any debt, liability or obligation owing from us to others which you or your subsidiaries may have obtained by assignment or otherwise, and further including, without limitation, all interest, fees, charges, expenses and attorneys' fees chargeable to our account or incurred by you or your subsidiary in connection with our account whether provided for herein or in any other agreement between us. At the request of any of your subsidiaries, you may pay over to it the amounts of all such Obligations owing to such subsidiaries. Any corporation which is at least fifty percent owned by you shall be deemed your subsidiary.

6. During the term of this Agreement, we shall not sell or assign or grant any security interest in any Receivables to anyone other than you, nor shall we mortgage, pledge or grant any security interest in any of our inventory or equipment to anyone other than you. We shall place notations upon our books of account to disclose the assignment of all Receivables to you or your security interest therein and shall perform all other steps requested by you to create and maintain in your favor a valid first security interest, assignment or pledge in, of or on all Receivables and all other security held by or to you. We waive presentment and protest of any instrument and notice thereof, notice of default and all other notices to which we might otherwise be entitled. You may at all times, have access to, inspect, audit and make extracts from all of our records, files and books of account and you may at any time remove from our premises all of them pertaining to our Receivables, and we shall furnish you quarterly with statements showing our financial condition and the results of our operations and you may make such information directly from our accountants. We shall deliver to you within ninety days after the end of our fiscal year, our year-end financial statement prepared by an independent Certified Public Account in a form acceptable to us. We appoint you or any other person whom you may designate as our attorney, with power: to endorse our name on any checks, notes, acceptances, money orders, drafts or other items of payment or security that may come into your possession; to sign our name on any invoice or bill of lading relating to any Receivables, on drafts against customers, on schedules and assignments of Receivables, on notices of assignment, financing statements and other public records, on verifications of accounts and on notices to customers; to notify the post office authorities to change the address for delivery of our mail to an address designated by you; to receive, open and dispose of all mail addressed to us; to send requests for verification of Receivables to customers or account debtors, and to do all things necessary to carry out this Agreement. We ratify and approve all acts of the attorney. Neither you nor the attorney will be liable for any acts or omissions nor for any error of judgment or mistake of fact or law. This power being coupled with an interest, is irrevocable so long as any Receivables assigned to you or in which you have a security interest remain unpaid or until the Obligations have been fully satisfied. You may file one or more financing statements disclosing your security interest without our signature appearing thereon.

7. This Agreement is deemed to be made and accepted by you in the State of New York and it and all transactions hereunder shall be governed by and interpreted in accordance with the laws of that state. It shall have an initial term of two years from its effective date and shall be automatically renewed for successive periods of one year unless terminated by either party on the anniversary of its effective date in any year by giving the other at least sixty days prior written notice. Termination shall be effected by the mailing of a registered or certified letter of notice addressed by either of us to the other at its address set forth herein and the termination shall be effective as of the date as fixed in such notice. Notwithstanding the foregoing, should we become insolvent or unable to meet our debts as they mature, or fail, suspend or go out of business or commit an act of bankruptcy or make a general assignment or if a proceeding in bankruptcy or any insolvency or reorganization proceeding be commenced by or against us, or if a Federal, State or any other tax lien be filed against us or judgment rendered against us, you shall have the right to terminate at any time without notice. Upon the effective date of termination, all Obligations whether or not incurred under this Agreement or any supplement hereto or otherwise shall become immediately due and payable without notice or demand. Notwithstanding termination, until all Obligations have been fully satisfied, you shall retain your security interest in and title to all existing Receivables and those arising thereafter, and we shall continue to assign Receivables to you and turn over all proceeds to you. Termination by us shall not be effective if there are any other Security Agreements outstanding.

8. If we default hereunder or if any of your rights hereunder are challenged or contested or if we fail to make payment of any of the Obligations when required of us, or fail to make any payment required by this Agreement or commit any breach of this Agreement, or any present or future Obligations then owing to you, whether due or not, and in addition thereto upon the occurrence of any of the above contingencies you are hereby given the unqualified right to retain counsel for any of the following purposes (i) to protect your interest in this Security Agreement (ii) to protect, assemble, sell, or foreclose any of the equipment, chattels, inventory, instruments, documents, chattel paper, general intangibles or other collateral now or hereafter pledged to you (iii) to collect any money which may become due under this or any other Security Agreement or Obligation from us or any account debtor, or any guarantor, or anyone else against whom you may have any direct or contingent claim pursuant to the terms hereunder or pursuant to the terms of any guarantee or assignment or Security Agreement (iv) to otherwise assist in any manner to protect, defend and enforce your rights hereunder or elsewhere contained, or collect any monies or obligations due from us. If you retain counsel for any of the purposes aforementioned we agree to pay reasonable counsel fees, the amount of which is hereby expressly fixed at a sum which shall be equal to fifteen per cent (15%) of the aggregate of the entire unpaid balance of our debt to you, and of all additional advances made thereunder whether due or not, and such counsel fees and all disbursements incurred by you including but not limited to all costs, charges, premiums, fees of Court and Public Officers and other disbursements and expenses incurred by you in connection with the enforcement, proceeding, collection, sale or suit involving any of the aforementioned purposes shall be paid by us on demand; and the amount thereof shall be added to the indebtedness secured by this Security Agreement and shall be secured by the lien given you by this and any other security instrument in the same manner as if said amount were a part of the principal sum due from us to you. You shall have in addition to all other rights provided herein, the rights and remedies of a secured party under the Uniform Commercial Code of the State of New York, and further, you may, without demand and without advertisement or notice, all of which we waive, at any time or times, sell and deliver any or all Receivables and any or all other security and collateral held by or for you at public or private sale, for cash, upon credit or otherwise, at such prices and upon such terms as you deem advisable, at your sole discretion. Any requirement of reasonable notice shall be met if such notice is mailed postage prepaid to us at our address as set forth herein at least five days before the time of sale or other disposition. You may be the purchaser at any such sale, if it is public, free from any right of redemption, which we also waive. The proceeds of sale shall be applied first to all costs and expenses of sale, including attorneys' fees, and second to the payment (in whatever order you elect) of all Obligations. You will return any excess to us and we shall remain liable to you for any deficiency. Failure by you to exercise any right, remedy or option under this Agreement or any present or future supplement hereto or in any other agreement between us or delay by us in exercising the same will not operate as a waiver; no waiver by you will be effective unless it is in writing and then only to the extent specifically stated. Your rights and remedies under this Agreement will be cumulative and not exclusive of any other right or remedy which you may have. Both of us waive all right to a trial by jury in any litigation relating to transactions under this Agreement.

9. That we, as further additional collateral security, by these presents assign to you all our present and future rights and any and all payments, checks and drafts, now made or hereafter to be made by any insurance company pursuant to any contract of insurance or indemnity now or hereafter in existence, regardless whether or not you are named as Secured Party and/or Mortgagee, and/or Loss Payee in said present or future policy or polices. The rights given to you hereunder are coupled with an interest and cannot be revoked by us. Each present and future insurance carrier is hereby authorized and directed to make all payments, drafts and checks payable to you with the same force and effect as if the same were paid directly to us.

10. a) We will furnish you with proof satisfactory to you of our making the payment or deposit of F.I.C.A. and withholding taxes required of us by applicable law. Such proof shall be furnished within five days after the due date for each payment or deposit established by law.

b) Should we fail to make any such payment or deposit or furnish such proof, you may, in your sole and absolute discretion, and without notice to us, (a) make payment of the same or any part thereof, or (b) set up such reserves in our account as you deem necessary to satisfy the liability therefor. Each amount so deposited or paid by you shall constitute an advance under the agreement and shall be secured by all collateral now or hereafter held by you.

c) Nothing herein contained shall obligate you to make such deposit or payment or set up such reserve, nor shall the making of one or more such deposits or payment or the setting up of any such reserve constitute (i) an agreement on your part to take any further or similar action, or (ii) a waiver of any default by us under the terms thereof or of the security agreement.

d) Upon the expiration or termination of the security agreement or transactions thereunder, you shall retain your security interests in all collateral held by you until we shall have paid or discharged all such obligations, secured to the date of such expiration or termination, or shall have supplied you with evidence satisfactory to you that due provision has been made therefor.

11. We will pay all costs and expenses and all recording and filing fees in connection with this Agreement, and all title insurance premiums, appraisals fees, audit fees and personal and real property searches in connection herewith, and the fees and disbursements of your counsel. You are hereby authorized to charge any amounts payable hereunder (including principal, interest, fees, charges and expenses) directly to our account with you. With regard to each of our customer checks that you deposit into your account, we will pay you twelve cents for each check so deposited. For your services in writing or transferring funds to our account for our accommodation, or issuing checks to third parties or processing bank returned items, we shall pay you Twenty-Five Dollars for each such accommodation.

12. That as further additional collateral security for the repayment of all our present and future Obligations to you, we agree that any security interest (including the security interest created hereunder) and/or mortgage and/or pledge of any property, whether of like or unlike nature, which you may now or hereafter have in, to and of any of our present or future property or assets, of any type or nature, shall at all times be and remain additional collateral for the prompt fulfillment by us of all our present and future Obligations hereunder or elsewhere contained.

13. All security interests now or hereafter held by you whether of like or unlike nature, shall always remain as collateral for all our present and future Obligations to you. You shall be under no obligation to terminate any of your liens, or security interests or surrender any collateral until all our Obligations are paid in full to you.

14. This Agreement cannot be changed or terminated orally. All of the rights, privileges, remedies and options given to you hereunder shall inure to the benefit of your successors and assigns; and all the terms, conditions, promises, covenants, provisions and warranties of this Agreement shall inure to the benefit of and shall bind the representatives, successors and assigns of each of us.

**\* \$500.00 PER AUDIT UP TO A MAXIMUM OF FOUR TIMES A YEAR.**

Very truly yours,

<table>
<tr><td>ATTEST</td><td>(SEAL)</td><td>PACE PRODUCT SOLUTIONS, INC.<br>(Name)</td></tr>
</table>

Secretary

By: BOAZ BAG-BAG    President

548 WEST 48TH STREET
(Address)

NEW YORK, NY    10036
(City and State)    (Zip)

Accepted at New York, New York.

On JANUARY 10 2006
SUMMIT CAPITAL CORP.

By:
HOWARD A. SCHULDER    President

# Certificate of Corporate Resolutions

WE, the undersigned, being respectively the     **President** and     **Secretary** of

**PACE PRODUCT SOLUTIONS, INC.**

a corporation organized under the laws of the State of **NEW YORK**

DO HEREBY CERTIFY that at a special meeting of the Board of Directors of said corporation, duly held

JANUARY **10**, 2006, at which all of the corporation's directors were present and acting, resolutions were

duly adopted by unanimous vote of which the following are a true copy:

"RESOLVED, that it is to the best interests of this corporation to enter into an Agreement with
**SUMMA CAPITAL CORP.**
(herein called the "Company") in the form generally used by the Company, providing for the making of loans to the corporation secured by the assignment to the Company of this corporation's accounts receivable, contracts, contract rights, general intangibles, chattel paper, documents, instruments, notes, drafts, acceptances and other choses in action, upon all of the terms and conditions set forth in said form of agreement; and further

RESOLVED, that any officer of this corporation be and hereby is authorized and empowered to execute and deliver, in the name and under the seal of this corporation and on its behalf, (a) such Agreement and any modifications thereof or supplements thereto, containing such rates, charges, terms and conditions as, in such officer's discretion, may appear proper; and (b) any and all other and further agreements, transfers, authorizations, letters, documents, certificates and financial statements which may, from time to time and at any time hereafter, be requested by the Company with respect to any matters or transactions of any kind between the Company and this corporation, whether or not arising out of, under or by reason of the said Accounts Receivable Financing Agreement; and further

RESOLVED, that each officer, director, agent and employee of this corporation be and hereby is authorized and empowered to execute and deliver, in the name of this corporation and on its behalf, pursuant to said Agreement, assignments of this corporation's accounts receivable, contracts, contract rights, general intangibles, chattel paper, documents, instruments, notes, drafts, acceptances and other choses in action, in such form as the Company may, from time to time require; and further

RESOLVED, that the Company and any officer, partner, agent or nominee of the Company be, and each of them hereby is, authorized and empowered to endorse the name of this corporation on any and all checks, notes, drafts and other instruments for the payment of money payable to endorsed to this corporation or its order; to deposit the same to the account and credit of the Company in any bank or trust company; and to deal with any and all such instruments and the proceeds thereof as the property of the Company; and further

RESOLVED, that such banks and trust companies in which the Company may at any time maintain any account be, and each of them hereby is, authorized and empowered to receive for deposit and credit to the Company, without any duty of inquiry whatsoever, any and all such instruments payable or endorsed to this corporation or in the order when bearing the endorsement or apparent endorsement of this corporation either by handwriting, typewriting, stamp impression or by any other means with or without the signature of any person purporting to be authorized herein or otherwise so to sign; and that no such bank or trust company shall have, incur, or be under any liability whatsoever to this corporation for any transfer or disposition which the Company may make of any such negotiable instrument or the proceeds thereof; and further

RESOLVED, that the foregoing authorities shall be and continue in full force and effect until revoked or modified by written notice, actually received by Company and such banks and trust companies at the office wherein the account of this Company is maintained, setting forth a resolution to that effect stated to have been adopted by the Board of Directors of this corporation and signed by one purporting to be the Secretary of this corporation and bearing its purported seal; and further

RESOLVED, that Company and such banks and trust companies are hereby authorized at all times to rely upon the last notice, certificate or communication received by them when so authenticated as to any resolution of this corporation and/or as to any other corporate matter, and Company and said banks and trust companies shall be held harmless in such reliance, even though such resolution may have been changed; and further

RESOLVED, that any officer of this corporation can authorize and direct the payment of any funds to or on behalf of this corporation to any person, partnership, corporation or anyone else, and Company shall be under no obligation to inquire into the propriety of any such payments or directions; and further

RESOLVED, that the secretary of this corporation be, and be hereby is authorized to certify and deliver to any such banks and trust companies copies of these resolutions."

WE FURTHER CERTIFY:

1. That neither the certificate of incorporation nor the by-laws contain any special requirement as to the number of directors required to pass the above resolutions; and

2. That the certificate of incorporation of the corporation does not require any vote or consent of shareholders to authorize the making of any agreements, pledges, or assignments above mentioned.

**In Witness Whereof**, we have signed this certificate and affixed the corporate seal hereto by order of the

said Board of Directors **JANUARY** **10**, 2006

**BOAZ BAG BAG**     President

Secretary

(corporate seal)

**SUMMA CAPITAL CORP.**

COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7612
NEW YORK, N.Y. 10118

PHONE 212-244-1200
FAX    212-244-1207
www.summacapital.com

January 8, 2008

Via Fax #212-582-7241

Mr. Boaz Bag Bag
President
Pace Product Solutions, Inc.
548 West 48th Street
New York, NY 10036

Re: Financing Agreement dated January 10, 2006 & other Agreements

Dear Boaz:

The above referred to Financing Agreement is amended as follows:

1. The maximum amount that may be outstanding at any time of $1,500,000. shall have sub lines as follows:

Pac01 - $500,000.
Pac02 -  400,000.
Pac03 -  300,000.
Pac10 -  275,000. (Reducing 10,000. a month from $350,000.)

All other terms and conditions of the agreement shall remain in full force and effect.

If the foregoing represents our understanding, please sign below where indicated and fax back.

Very truly yours,

Howard A. Schulder
President

READ AND AGREED TO:

PACE PRODUCT SOLUTIONS, INC.

By
    Boaz Bag Bag, President

SUMMA CAPITAL CORP.
COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7512
NEW YORK, N.Y. 10118
PHONE 212-244-1200
FAX    212-244-1207
www.summacapital.com

November 27, 2007

Via Fax #212-582-7241

Mr. Boaz Bag Bag
President
Pace Product Solutions, Inc.
548 West 48th Street
New York, NY 10036

Re: Financing Agreement dated January 10, 2006 & other Agreements

Dear Boaz:

The above referred to Financing Agreement is amended as follows:

1. The maximum amount that may be outstanding at any time of $1,500,000. shall have sub lines as follows:

Pac01 - $600,000.
Pac02 - 300,000.
Pac03 - 300,000.
Pac10 - 280,000. (Reducing 10,000. a month from $350,000.)

All other terms and conditions of the agreement shall remain in full force and effect.

If the foregoing represents our understanding, please sign below where indicated and fax back.

Very truly yours,

Howard A. Schulder.
President

READ AND AGREED TO:

PACE PRODUCT SOLUTIONS, INC.

By
Boaz Bag-Bag, President

**SUMMA CAPITAL CORP.**

COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7812
NEW YORK, N.Y. 10118
PHONE 212-244-1200
FAX    212-244-1207
www.summacapital.com

October 16, 2007

Via Fax #212-582-7241

Mr. Boaz Bag Bag
President
Pace Product Solutions, Inc.
548 West 48th Street
New York, NY 10036

Re: Financing Agreement dated January 10, 2006 & other Agreements

Dear Boaz:

The above referred to Financing Agreement is amended as follows:

1. The maximum amount that may be outstanding at any time of $1,500,000.
   shall have sub lines as follows:

   Pac01 - $650,000.
   Pac02 - 250,000.
   Pac03 - 300,000.
   Pac10 - 300,000. (Reducing 10,000. a month from $350,000.)

Regarding – Pac03 increase, you will pay an additional annual facility fee of
$500.

All other terms and conditions of the agreement shall remain in full force and
effect.

If the foregoing represents our understanding, please sign below where indicated
and fax back.

Very truly yours,

Howard A. Schulder
President

READ AND AGREED TO:

PACE PRODUCT SOLUTIONS, INC.

By
Boaz Bag Bag, President

SUMMA CAPITAL CORP.

COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7612
NEW YORK, N.Y. 10118
PHONE  212-244-1200
FAX    212-244-1207
www.summacapital.com

October 3, 2007

Via Fax #212-582-7241

Mr. Boaz Bag Bag
President
Pace Product Solutions, Inc.
548 West 48th Street
New York, NY 10036

Re: Financing Agreement dated January 10, 2006 & other Agreements

Dear Boaz:

The above referred to Financing Agreement is amended as follows:

1. The maximum amount that may be outstanding at any time of $1,500,000.
   shall be sub lines as follows:

   Pac01 - $650,000. —
   Pac02 -  250,000.
   Pac03 -  250,000.
   Pac04 -  305,000. (Reducing 10,000. a month)

All other terms and conditions of the agreement shall remain in full force and
effect.

If the foregoing represents our understanding, please sign below where indicated
and fax back.

Very truly yours,

Howard A. Schulder
President

READ AND AGREED TO:

PACE PRODUCT SOLUTIONS, INC.

By  X
Boaz Bag Bag, President

SUMMA CAPITAL CORP.
COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7612
NEW YORK, N.Y. 10118
PHONE 212-244-1200
FAX  212-244-1207
www.summacapital.com

September 20, 2007

Via Fax #212-582-7241

Mr. Boaz Bag Bag
President
Pace Product Solutions, Inc.
548 West 48th Street
New York, NY 10036

Re: Financing Agreement dated January 10, 2006 & other Agreements

Dear Boaz:

The above referred to Financing Agreement is amended as follows:

1. The maximum amount that may be outstanding at any time of $1,500,000.
   shall be sub lines as follows:

   Pac01   $600,000.
   Pac02 -  300,000.
   Pac03 -  250,000.
   Pac04 -  350,000. (Reducing Balance)

All other terms and conditions of the agreement shall remain in full force and effect.

If the foregoing represents our understanding, please sign below where indicated and fax back.

Very truly yours,

Howard A. Schulder
President

READ AND AGREED TO:

PACE PRODUCT SOLUTIONS, INC.

By
    Boaz Bag Bag, President



SUMMA CAPITAL CORP.

COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7612
NEW YORK, N.Y. 10118

PHONE 212-244-1200
FAX    212-244-1207
www.summacapital.com

July 31, 2007

Via Fax #212-582-7241

Mr. Boaz Bag Bag
President
Pace Product Solutions, Inc.
548 West 48th Street
New York, NY 10036

Re: Financing Agreement dated January 10, 2006 & other Agreements

Dear Boaz:

The above referred to Financing Agreement is amended as follows:

1. The maximum amount that may be outstanding at any time shall increase
   from $1,450,000. to $1,500,000. You will pay an additional annual facility fee
   of $500. You now have the following sub lines:

   Pac01 - $550,000.
   Pac02 -  350,000.
   Pac03 -  250,000.
   Pac04 -  350,000. (Reducing Balance)

All other terms and conditions of the agreement shall remain in full force and
effect.

If the foregoing represents our understanding, please sign below where indicated
and fax back.

Very truly yours,

Howard A. Schulder
President

READ AND AGREED TO:

PACE PRODUCT SOLUTIONS, INC.

By
   Boaz Bag Bag, President

**SUMMA CAPITAL CORP.**
COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7512
NEW YORK, N.Y. 10118
PHONE 212-244-1200
FAX    212-244-1207
www.summacapital.com

July 11, 2007

Via Fax #212-582-7241

Mr. Boaz Bag Bag
President
Pace Product Solutions, Inc.
548 West 48th Street
New York, NY 10036

Re: Financing Agreement dated January 10, 2006 & other Agreements

Dear Boaz:

The above referred to Financing Agreement is amended as follows:

1. The maximum amount that may be outstanding at any time shall increase from $1,400,000. to $1,450,000. You will pay an additional annual facility fee of $500. You now have the following sub lines:

   Pac01 - $400,000.
   Pac02 -   500,000.
   Pac03 -   200,000.
   Pac04 -   350,000.

All other terms and conditions of the agreement shall remain in full force and effect.

If the foregoing represents our understanding, please sign below where indicated and fax back.

Very truly yours,

Howard A. Schulder
President

READ AND AGREED TO:

PACE PRODUCT SOLUTIONS, INC.

By
Boaz Bag Bag, President

REVIEW

**SUMMA CAPITAL CORP.**
COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7812
NEW YORK, N.Y. 10118
PHONE 212-244-1200
FAX  212-244-1207
www.summacapital.com

March 28  2007

Via Fax #212-582-7241

Mr. Boaz Bag Bag
President
Pace Product Solutions, Inc.
548 West 48ᵗʰ Street
New York, NY 100:16

Re: Financing Agreement dated January 10, 2005

Dear Boaz:

The above referred to Financing Agreement is amended as follows:

1. The maximum amount that may be outstanding at any time shall increase from $500,000. to $550,000. You will pay an additional annual facility fee of $500. You now have the following sub lines:

   Pac01 - $350,000.
   Pac03 - 200,000. - Inventory advance rate increased to 30%.

All other terms and conditions of the agreement shall remain in full force and effect.

If the foregoing represents our understanding, please sign below where indicated and fax back.

Very truly yours,

Howard I. Schulder
President

READ AND AGREED TO:

PACE PRODUCT SOLUTIONS, INC.

By _____
   Boaz Bag Bag, President

## SUMMA CAPITAL CORP.

COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7412
NEW YORK, N.Y. 10118

PHONE 212-244-1200
FAX    212-244-1207
www.summacapital.com

October 3, 2006

Via Fax #212-582-7241

Mr. Boaz Bag Bag
President
Pace Product Solutions, Inc.
548 West 48th Street
New York, NY 10036

Re: Financing Agreement dated January 10, 2006

Dear Boaz:

The above referred to Financing Agreement is amended as follows:

1. The maximum amount that may be outstanding at any time shall increase from $400,000. to $500,000. You will pay an additional annual facility fee of $1,000. You now have the following sub lines:

   Pac01 - $300,000. - ---- - -------- -
   Pac03 -  200,000. - Inventory advance rate increased to 30%.

All other terms and conditions of the agreement shall remain in full force and effect.

If the foregoing represents our understanding, please sign below where indicated and fax back.

Very truly yours,

Howard A. Schulder
President

READ AND AGREED TO:

PACE PRODUCT SOLUTIONS, INC.

By_____
Boaz Bag Bag, President

**SUMMA CAPITAL CORP.**

COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7613
NEW YORK, N.Y. 10118

PHONE 212-244-1200
FAX    212-244-1507
www.summacapital.com

June 28, 2006

Via Fax #212-582-7241

Mr. Boaz Bag Bag
President
Pace Product Solutions, Inc.
548 West 48th Street
New York, NY 10036

Re: Financing Agreement dated January 10, 2006

Dear Boaz:

The above referred to Financing Agreement is amended as follows:

1. The maximum amount that may be outstanding at any time shall increase from $300,000. to $400,000. You will pay an additional annual facility fee of $1,000. You now have the following sub lines:

   Pac01 - $250,000.
   Pac03 -  150,000.

All other terms and conditions of the agreement shall remain in full force and effect.

If the foregoing represents our understanding, please sign below where indicated and fax back.

Very truly yours

Howard A. Schuder
President

READ AND AGREED TO:

PACE PRODUCT SOLUTIONS, INC.

By
Boaz Bag Bag, President

**SUMMA CAPITAL CORP.**

COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7612
NEW YORK, N.Y. 10118
PHONE 212-244-1200
FAX   212-244-1207
www.summacapital.com

May 2, 2006

Via Fax #212-582-7241

Mr. Boaz Bag Bag
President
Pace Product Solutions, Inc.
548 West 48th Street
New York, NY 10036

Re: Financing Agreement dated January 10, 2006

Dear Boaz:

The above referred to Financing Agreement is amended as follows:

1. The maximum amount that may be outstanding at any time shall increase from $250,000. to $300,000. You will pay an additional annual facility fee of $500. You now have the following sub-lines:

Pac04 – $200,000.
Pac03 –  100,000.

All other terms and conditions of the agreement shall remain in full force and effect.

If the foregoing represents our understanding, please sign below where indicated and fax back.

Very truly yours,

Howard A. Schulder
President

READ AND AGREED TO:

PACE PRODUCT SOLUTIONS, INC.

By_____
Boaz Bag Bag, President

SUMMA CAPITAL CORP.

COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7612
NEW YORK, N.Y. 10118
PHONE 212-244-1206
FAX    212-244-1207
www.summacapital.com

March 24, 2006

Via Fax #212-582-7241

Mr. Boaz Bag Bag
President
Pace Product Solutions, Inc.
548 West 48th Street
New York, NY 10036

Re: Financing Agreement dated January 10, 2006

Dear Boaz:

The above referred to Financing Agreement is amended as follows:

1. The maximum amount that may be outstanding at any time shall increase from $200,000 to $250,000. You will pay an additional annual facility fee of $500. You now have the following sub lines:

Pac01 - $150,000.
Pac02 -   50,000.
Pac03 -   50,000.

All other terms and conditions of the agreement shall remain in full force and effect.

If the foregoing represents our understanding, please sign below where indicated and fax back.

Very truly yours,

Howard A. Schulder
President

READ AND AGREED TO:

PACE PRODUCT SOLUTIONS, INC.

By_____
Boaz Bag Bag, President

**SUMMA CAPITAL CORP.**

COMMERCIAL FINANCING
EMPIRE STATE BUILDING
SUITE #7612
NEW YORK, N.Y. 10118
PHONE 212-244-1200
FAX    212-244-1207
www.summacapital.com
February 7, 2006

Via Fax #212-582-7241

Mr. Boaz Bagbag
Pace Product Solutions, Inc.
548 West 48th Street
New York, NY 10036

Re: Financing Agreement dated: January 10, 2006

Dear Boaz:

In accordance with your request, we are creating a line of credit for you in the amount of $50,000, secured by your inventory. You may borrow up to 25% of your inventory up to a maximum $50,000. You will forward to us a detailed listing of your inventory as of the end of each month. Your total line will now be $200,000. You will pay an additional 1% annual facility fee of $500, for this increase. This amount will be added to your monthly charge in February.

In addition, we are setting up a separate accounts receivable loan ledger to reflect invoices you will be assigning in connection with sales by your new salesmen, Jesus. A separate ledger card to allow you to keep a separate record of the sales and borrowings against them. However, all accounts receivable of your company as well as all inventory and all other assets secure all loans made by us to your company.

If the foregoing represents our understanding, please sign below where indicated and fax a copy back to us.

Warmest regards.

Very truly yours,

Howard A. Schulder
President

Pace Product Solutions, Inc.

By
Boaz Bagbag, President

Boaz Bagbag

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                                        :        Chapter 7
                                                              :        Case No. 08-12666 (MG)
Pace Product Solutions, Inc.,                                 :
                                                              :
                                         Debtor.              :
                                                              :
-------------------------------------------------------------x

## STIPULATION AND ORDER MODIFYING STAY TO PERMIT
## FORECLOSURE BY SUMMA CAPITAL CORPORATION
## AND OTHER RELIEF

**WHEREAS**, the above referenced Debtor Pace Product Solutions, Inc.

(the "Debtor") entered into a Financing Agreement, Security Agreement - Inventory and

Security Agreement - Equipment, each dated January 10, 2006 (collectively, as amended

from time to time referred to as the "Summa Agreements") with Summa Capital

Corporation ("Summa") pursuant to which the Debtor granted a security interest (the

"Lien") in favor of Summa in all existing and after-acquired property of the Debtor, to

secure payment of the Debtor's indebtedness to Summa on account of existing and future

loans from Summa, including the following:

All present and future accounts and contract rights, including all related documents,
instruments and chattel paper, and all present and future general intangibles;

All present and hereinafter acquired inventory of debtor, wherever located, including raw
materials, work in process, finished goods, finished merchandise, and wrapping, packing
and shipping materials;

All present and hereinafter acquired equipment of debtor, wherever located, together with
all additions, replacements, accessions and improvements, thereto; and

Proceeds of all the foregoing

(collectively, the "Collateral"); and

**WHEREAS**, on January 11, 2006, Summa perfected its Lien against the

Collateral by recording a UCC Financing Statement with the New York Secretary of State (filing no. 200601118013030); and

WHEREAS, on July 10, 2008 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court") and pursuant to Order Converting Chapter 11 Case to a Case under Chapter 7 and Limiting Access to Debtor's Business Premises dated July 24, 2008, this Court converted the Debtor's Chapter 11 case to a Chapter 7 case; and

WHEREAS, on the Filing Date, Summa asserts that it was owed not less than $1,697,183.91, which includes principal and interest through the Filing Date and attorneys' fees and expenses through May 31, 2008, together with interest that continues to accrue and all of Summa's attorneys' fees, costs, and expenses incurred thereafter (the "Summa Claim"); and

WHEREAS, Albert Togut is the Chapter 7 Interim Trustee of the Debtor, (the "Trustee"); and

WHEREAS, Trustee has retained Togut, Segal and Segal LLP as his counsel ("TS&S") and will be submitting retention papers to the Court; and

WHEREAS, Summa asserts that the Summa Claim exceeds the value of the Collateral; and

WHEREAS, with the Trustee's permission, Summa has safeguarded and protected the Collateral at the Debtor's premises located at 122 School Street, Yonkers, New York (the "Premises") by changing the locks at the Premises, at no cost to the Debtor's estate, but without prejudice to Summa's right to increase the Summa Claim by the costs incurred by Summa in connection with the foregoing actions; and

-2-

**WHEREAS**, the parties hereto have agreed to the terms set forth below to allow Summa to exercise its rights as a secured creditor of the Debtor.

**NOW, THEREFORE, IT IS HEREBY AGREED BY AND BETWEEN THE UNDERSIGNED PARTIES THAT:**

1.      This Stipulation and Order shall become immediately effective upon entry by the Court.

2.      The automatic stay pursuant to section 362 of the Bankruptcy Code is modified to permit Summa to exercise its rights as a secured creditor of the Debtor against the Collateral under (i) the Summa Agreements, (ii) the Uniform Commercial Code and (iii) other applicable law, including, without limitation, to take all actions necessary to enforce its security interest in the Collateral, collect accounts receivable, sell inventory, equipment and other Collateral, and apply all net proceeds, after payment of Summa's expenses, attorneys' fees and other costs, in reduction of the Summa Claim, but which relief from stay expressly excludes all avoidance claims, in favor of the Trustee and the Debtor's estate pursuant to Chapter 5 of the Bankruptcy Code, that do not relate in any way to the Collateral to which Summa's liens do not attach.

3.      Summa is authorized to take possession of the Collateral and all books and records relating to the Collateral, including those maintained electronically on computer. Summa will provide the Trustee and his professionals access to the Debtor's books and records during normal business hours upon reasonable request, and shall not dispose of the books and records without prior written notice to the Trustee, which notice shall provide the Trustee with an opportunity to take possession of the books and records or object to the disposal thereof (subject to the Trustee's agreement to take possession of the books and records).

-3-

4.    The Trustee shall turn over to Summa (a) in kind all collections with respect to Summa's accounts receivable and other Collateral now or hereafter in the Trustee's possession or control, and (b) any and all sums in the Debtor's bank account(s) promptly upon the Trustee learning of the existence of such account(s), and Summa is hereby authorized to give the banks holding such account(s) all necessary instructions with respect to the turnover of all deposits in such account(s) to Summa.

5.    Summa is authorized to take all actions necessary to recover the Collateral from the Debtor's principal, Boaz Bagbag, and all third parties now or hereafter in possession of the Collateral, and all such persons are directed to promptly turn over the Collateral to Summa.

6.    Summa shall provide advance notice to the Trustee regarding the sale or other disposition of the Collateral.

7.    Summa shall provide the Trustee with (a) a written accounting of its sale and/or other disposition of the Collateral not later than sixty (60) days after the completion of such sale or other disposition and (b) quarterly reports of all of Summa's collection of the Debtor's accounts and accounts receivable.

8.    Should there be any surplus resulting after the collection, sale and/or other disposition of the Collateral, after payment of the reasonable attorneys' fees, costs and expenses incurred by Summa in connection with the foregoing and full payment of the Summa Claim, Summa shall remit such surplus to the Trustee.

9.    The Trustee and Summa reserve all of their rights, claims and defenses, including pursuant to 11 U.S.C. Section 506(c), except as expressly set forth in this Stipulation.

10.    In the event that the Court does not approve this Stipulation, it

-4-

shall be null and void and of no force and effect.

11.    Simultaneously with the submission of this Stipulation and Order to the Court, Summa shall provide a copy of this Stipulation and Order by email or facsimile to: (i) the Trustee's counsel; (ii) the United States Trustee; (iii) the Debtor's counsel; (iv) Bondi & Iovino, attn: Debra Welsh, Esq. and Law Office of Robert Jay Gumenick, Esq., attn: Robert Jay Gumenick, who appeared at the Court's hearing on July 21, 2008 on Summa's motion for relief from stay and other relief on shortened notice;

and (v) any party that has filed a Notice of Appearance in this case. The parties hereto request that upon entry of an Order approving this Stipulation, the Court find that such notice is good and sufficient and that no further notice is required.

DATED:     New York, New York
           July 31, 2008

                                ALBERT TOGUT,
                                By his attorneys,
                                TOGUT SEGAL & SEGAL LLP
                                By:

/s/ Neil Berger
NEIL BERGER (NB-3599)
A Member of the Firm
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

SUMMA CAPITAL CORPORATION
By its attorneys,
LOWENSTEIN SANDLER PC
By:

/s/ Bruce S. Nathan
BRUCE S. NATHAN (BN-4844)
BRUCE BUECHLER (BB-3278)
Members of the Firm
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700

**SO ORDERED** on this **31st day of July, 2008**
in New York, New York

       **/s/Martin Glenn**
HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

# INVOICE



## DALEY-HODKIN LLC

P.O. BOX 1229, MELVILLE, NY 11747
PHONE: (631) 293-0200 FAX: (631) 293-0326
E-MAIL: auction@daley-hodkin.com  WEB-SITE: www.daley-hodkin.com

SALE # 08-0060
DATE: 16-Oct-08
SOLD TO: MEP AUTO, INC.
ADDRESS: 518 WEST 44TH STREET
NEW YORK, NY 10036

BUYER #: 479
ATTENTION: ANDREW ROSENBERG
PHONE: 212-297-3166
FAX:

| LOT | QUANTITY | DESCRIPTION | UNIT COST | EXT. PRICE |
|---|---|---|---|---|
| | 1 LOT | Bulk bid for all assets consisting of inventory pallet racking, metal shelving, ladders, carts Clark Forklift, office furniture, office equipment, 1992 Chevrolet Suburban AstroEXT VIN 1GNDM19Z4NB217325 and 1994 Dodge/Chrysler Utility RAM 350 VIN 2B5WB35Y8RK134215 | 525,000.00 | $ 525,000.00 |

525,000.00

BUYERS PREMIUM - 0%
SALES TAX - 8.375%

**TOTAL DUE**      **$ 525,000.00**
3-Nov-08 PAID IN FULL     **$0.00**

ALL SALES ARE SOLD "AS-IS", "WHERE-IS", WITHOUT RECOURSE AND WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER INCLUDING REPRESENTATIONS OR WARRANTIES AS TO QUALITY, CONDITION, OSHA SAFETY REQUIREMENTS, DESCRIPTION, MERCHANTABILITY OR FITNESS FOR ANY PURPOSE. PURCHASER IS RESPONSIBLE FOR MAKING ALL REMOVAL ARRANGEMENTS.

PURCHASER ACKNOWLEDGES THAT HE HAS READ AND AGREES TO ALL OF THE TERMS OF SALE CONTAINED IN THE SALE CATALOG OR PROVIDED TO THE PURCHASER.

SIGNATURE: _Juan Tomas Peroz Represent buy MEP Auto_

DATE: 11-7-08

# EXHIBIT D

# DH

# DALEY-HODKIN LLC

**PACE PRODUCT SOLUTIONS, INC.**
**REMITTANCE REPORT**

20-Nov-08

| | | | |
|---|---|---|---|
| Gross Proceeds - (Exhibit "A") | | | $ 525,000.00 |
| Adjusted Gross Proceeds | | | $525,000.00 |
| Auctioneer's Fee Of 10%: | | $52,500.00 | |

**EXPENSES**

Marketing Expense: - (Exhibit "B")
Advertising:

| | | | |
|---|---|---|---|
| New York Times - 10/05/08 | 2,413.00 | | |
| Journal News 10/05/08 - 10/08/08 | 1,801.00 | | |
| Automotive News 09/24/08 | 950.00 | | |
| Newark Star Ledger 10/05/08 | 946.00 | 6,110.00 | |

Direct Mail Marketing

| | | | |
|---|---|---|---|
| Mailing (500) Direct Mail Advertisements | | 480.00 | |

Internet Postings and Email blasts:

| | | | |
|---|---|---|---|
| Search-autoparts.com | 4,400.00 | | |
| All World Inc. | 250.00 | | |
| DH: email blasts | N/C | | |
| IP Koke: www.daley-hodkin.com (DH website) | N/C | | |
| National Auctioneers Association: www.auctioneers.org | N/C | | |
| Industrial Auctioneers Association: www.industrialauctioneers.org | N/C | 4,650.00 | |

Labor Expense: - (Exhibit "C")

| | | | |
|---|---|---|---|
| Auction Labor (Possession, Preparation, Inspections & Day of Sale) | 14,428.75 | | |
| Physical Inventory Count | | | |
| On-Site Counting | 18,352.00 | | |
| Data Entry | 16,568.75 | | |
| 10% Credit For Physical Inventory Count | (3,492.08) | 45,857.42 2 | |

Miscellaneous Expense: - (Exhibit "D")

| | | | |
|---|---|---|---|
| Mileage | 1,540.13 | | |
| Legal Fees | 875.00 | | |
| Locksmith - July 25, 2008 | 645.00 | | |
| Tolls | 292.60 | | |
| Battery Starts | 40.00 | | |
| Courier Service | 74.80 | | |
| Overnight Delivery Services | 12.12 | | |
| Wire Transfer Bank Processing Fees | | | |
| Outging Fees 2 @ $22.00 each | 44.00 | | |
| Incoming Fees: 3 @ $17.00 each | 51.00 | 3,574.65 | |

| | |
|---|---|
| Total Expenses | 60,652.07 7 |
| Total Fee and Expenses | (113,152.08) |
| Net Proceeds | $ 411,847.93 |

# EXHIBIT E

## SUMMA CAPITAL CORP.
### Loan Status Report

| Loan# | Name | Advance Rate | Ineligible/ Reserve | Gross/Net Collateral | Gross/Net Loan | Available | Sales M-T-D | Credit&Adjs M-T-D | Col.Cash Loan/Cash | AR/Loan Turn |
|---|---|---|---|---|---|---|---|---|---|---|
| PAC01 | PACE PRODUCT SOLUTIONS, INC. | 60 | 133,293.53 | 461,255.84 | 486,220.17 | (225,852) | 67,095 | (55,731) | 0 | 0.0 |
| AR | Loan Limit: 500,000.00 | | 0.00 | 282,363.25 | | | | | 0 | -0.0 |
| | LAST AGING 02/29/08 | | | | | | | | | |
| | AUTO PARTS | | | | | ***Interest Due*** | | | No Collections: 35 Days | |
| | Doc: [ 01/17/06 AUDIT ] | | [ 12/31/07 FINANCIAL STATEMENTS ] | | | | | | | |
| PAC02 | FLASH SALES, INC. | $0 | 135,341.37 | 614,228.14 | 396,011.36 | (94,904) | 93,276 | (110,888) | 0 | 0.0 |
| AR | Loan Limit: 400,000.00 | | 0.00 | 303,107.42 | | | | | 0 | 0.0 |
| | LAST AGING 02/29/08 | | | | | | | | | |
| | | | | | | | | | No Collections: 35 Days | |
| PAC03 | PACE PRODUCT SOLUTIONS, INC. | 30 | 0.00 | 300,481.59 | 357,021.52 | (275,877) | 1,917 | 0 | 0 | |
| IN | Loan Limit: 300,000.00 | | 0.00 | 90,144.51 | | | | | 0 | |
| | LAST AGING | | | | | | | | | |
| PAC10 | PACE PRODUCT SOLUTIONS, INC. | 30 | 0.00 | 1,459,508.02 | 255,000.00 | 0 | (31,190) | 0 | 0 | |
| IN | Loan Limit: 255,000.00 | | 0.00 | 437,851.81 | | | | | 6,000 | |
| | FLASH INVENTORY | | | | | | | | | |
| | Client Total: 1,600,000.00 | | 268,635.40 | 2,735,467.59 | 1,506,255.35 | (596,633) | 130,699 | (166,619) | 0 | |
| | (PACE PRODUCT SOLUTIONS, INC.) | | 0.00 | 1,053,471.98 | | | | | 5,000 | |
| | | | | | | *** Over Loan/Over Total Line/Over Sub-Line *** | | | | |
| | Grand Total: | | 268,635.40 | 2,735,467.59 | 1,506,255.35 | (596,633) | 130,699 | (166,619) | 0 | |
| | | | 0.00 | 1,053,471.98 | | | | | 5,000 | |

# United States Bankruptcy Court
## Southern District of New York

In re

BOAZ BAGBAG,

Bankruptcy
Case No. 08-12667 (MEW)

Debtor(s)

BOAZ BAGBAG

Plaintiff(s)

SUMMA CAPITAL CORP.

Adversary
Proceeding No.

Defendant(s)

## SUMMONS AND NOTICE OF PRETRIAL CONFERENCE
## IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days, to:

> **United States Bankruptcy Court, Southern District of New York**
> **One Bowling Green**
> **New York, New York 10004-1408**

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney: |
| --- |
| James H. Shenwick, Esq., Shenwick & Associates, 122 East 42nd Street, Suite 620, New York, NY 10168 |

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place:

| United States Bankruptcy Court Southern District of New York One Bowling Green New York, NY 10004-1408 | Room: |
| --- | --- |
| | Date and Time: |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

/s/ _____

*Clerk of the Bankruptcy Court*

By: /s/ _____

_____

*Date*

*Deputy Clerk*