**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                              :          **Chapter 7**
                                                   :
**BOAZ BAGBAG,**                                   :          **Case No. 08-12667 (MEW)**
                                                   :
                              **Debtor.**          :
------------------------------------------------------------x
**BOAZ BAGBAG,**                                   :
                                                   :
                         **Petitioner,**           :
                                                   :
             **- against -**                       :          **Adv. Proc. No. 19-01022 (MEW)**
                                                   :
**SUMMA CAPITAL CORP.,**                           :
                                                   :
                         **Respondent.**           :
------------------------------------------------------------x

## <u>DECISION DENYING MOTION TO VACATE JUDGMENT</u>

This adversary proceeding originated in the Supreme Court for the State of New

York.  It was removed to the United States District Court for the District of New York

and then referred to this Court. The Debtor's action sought an accounting and discovery

related to pre-judgment calculations related to a June 10, 2010 Judgment (the "2010

Judgment") entered by the Bankruptcy Court, which the Debtor asserted had been fully

paid.  The Debtor also asserted that the Debtor's former bankruptcy counsel did not have

authority to enter into the settlement that formed the basis for the entry of the 2010

Judgment.

At a pre-trial conference held on April 2, 2019, the Court held that the complaint

should be treated as a motion for relief from a judgment pursuant to Fed. R. Civ. P. 60,

made applicable by Fed. R. Bankr. P. 9024.  The Court directed the Debtor to file a such

a motion, which the Debtor did on April 19, 2019 (the "Rule 60(b) Motion"). [Dkt No.

14].  Summa Capital opposed the Rule 60(b) Motion.  At the April 2, 2019 conference,

the Court also denied the Debtor's request for certain discovery as unwarranted until the

Court ruled on whether there were grounds to re-open the 2010 Judgment.

The evidentiary hearing on the Rule 60(b) Motion was held on July 30-31, 2019

(the "**Hearing**").  At the conclusion of the Hearing the Court announced its decision and

the bases for its decision.  This written Decision incorporates the Court's rulings and

modifies it slightly for purposes of clarification and for purposes of adding appropriate

citations.

There are two issues raised by Mr. Bagbag's motion for relief that are serious issues but

that the Court does not need to reach.  The first issue relates to the timing of the motion.  It

comes nearly nine years after the judgment was entered.  The motion alleges that there was a

mistake or lack of understanding, or lack of authority, or fraud in connection with the entry of

the stipulated judgment.  There is substantial basis for an argument that those are grounds that

needed to be asserted within one year after the entry of the judgment in order to permit relief

from the judgment.  *See* Fed. R. Civ. P. 60(b)(1)-(3), (c)(1).  To the extent the motion seeks relief

under Rule 60(b)(6), it still had to be asserted in a reasonable time.  Essentially what happened

here is that Mr. Bagbag willfully blinded himself to what happened in his own bankruptcy case,

and contends that it is reasonable, nine years later, to raise issues that he says he only recently

discovered but that he could have raised much earlier if he had paid attention.  I think there is a

serious question whether that would have been enough under Rule 60(c)(1).

The second issue is whether Mr. Bagbag's attorney had apparent authority to enter into

the relevant stipulation and to agree, on Mr. Bagbag's behalf, to the entry of a judgment.  The

record made clear the attorney's participation in settlement discussions was explicitly authorized

2

by Mr. Bagbag. The record suggests that the attorney may have had apparent authority that would have been enough to support the judgment.

However, I do not need to address the timeliness of the motion, or the apparent authority issues, because I find, based on the record, that actual authority to enter into the stipulation was given. The arguments to the contrary, I find, are wholly without merit.

It is clear, under the authorities that Mr. Bagbag's counsel cited to me yesterday, which discussed both apparent authority and actual authority, that lawyers are presumed to have acted with authority. *Pereira v. Sonia Holdings, Ltd (In re Artha Management, Inc.)* 91 F.3d 326, 330 (2d Cir. 1996), *Kollel Mateh Efraim, LLC*, 334 B.R. 554, 559 (S.D.N.Y. 2005). Under the Second Circuit standards, proof of a lack of authority is allowed but the proof must be substantial, and it is the burden of the party who seeks to question his attorney's authority to provide such proof. *See Pereira v. Sonia Holdings, Ltd (In re Artha Management, Inc.)* 91 F.3d 326, 330 (2d Cir. 1996) (noting that the presumption places the burden of proof on the party challenging authority, which requires "clear evidence" that a party intended not to be bound by its attorney's signature); *United States v. Int'l Bhd. of Teamsters*, 986 F.2d 15, 20 ( 2d Cir. 1993) (stating that "[t]he burden of proving that an attorney entered into a settlement agreement without authority is not insubstantial); *Kollel Mateh Efraim, LLC*, 334 B.R. 554, 559 (S.D.N.Y. 2005) (noting that party challenging its attorney's authority to settle a case bears the burden of proving it by "affirmative evidence").

Proof of a lack of authority was not provided in this case. Mr. Bagbag's and his lawyer's recollections were rather fuzzy as to just what they discussed, which is understandable since we are now nine years after the fact. However, the attorney (Mr. Katzner) was confident that in fact he did discuss and explain this stipulation with Mr. Bagbag. The most definitive evidence on

this point is Summa's Exhibit "LL," which makes quite clear to me, and I so find, that on June 2,

2010 Mr. Katzner sent, to Mr. Bagbag, the stipulation that formed the model for the Summa

stipulation, which was a stipulation with another group of creditors represented by Mr.

Gumenick.  I find that Mr. Katzner had previously discussed that stipulation with Mr. Bagbag,

and I don't really think I had much of a denial of that from Mr. Bagbag.  Mr. Katzner also

forwarded, with his email, the "proposed Stipulation" with Summa, with a characterization that

Summa wants the same thing that was in the Gumenick stipulation – namely, an agreement on

the amount of its debt and an agreement that the debt would be nondischargeable.  Mr. Bagbag's

counsel produced a different version of this email chain (PX 10) that ended with a statement by

Mr. Bagbag that the stipulation was okay if it "sealed the case completely."  But the more

complete exchange that appears in Exhibit LL shows that Mr. Katzner then responded by saying

that the stipulation would eliminate a potential obstacle to a dismissal of the case, and that "you

will still owe the money regardless of what happens."  In context this makes clear that whether

the case is dismissed, or whether the case remains open but with a stipulated judgment, the debt

would not be discharged.  Mr. Bagbag now claims that this outcome was wholly unthinkable to

him, but it is exactly what that sentence says.  Mr. Katzner then asked "[s]hould I move forward

with it?" and the unmistakable, clear response - undenied response - by Mr. Bagbag was "yes."

The email chain set forth in Exhibit LL conferred actual authority to enter into the

Stipulation and to agree to the entry of the judgment in favor of Summa.  It authorized the

judgment just as much as if Mr. Bagbag had, at that point -- with the exact same knowledge --

signed the stipulation in his own name and by his own hand.  If he now thinks that he

misunderstood, or that he gave authority without having as much of an educated response from

his counsel as he now would have liked, or that his counsel was inexperienced and maybe should

4

not have even recommended this, those are questions about potential malpractice that I think are barred by the passage of time. They are not questions about the authority to execute the stipulation that he plainly granted to his attorney.

There are also allegations in the motion papers that the defendant, Summa, committed fraud in connection with the judgment. Fraud is a claim that is supposed to be raised under Rule 60(b) within one year, but there is a vague provision in the rule that says the Court retains the authority to address fraud on the court, notwithstanding the one-year time limit. The fraud allegation was wholly unsupported and was wholly unwarranted here. Mr. Bagbag now has questions about what went into the calculation of the judgment amount, but he agreed to it at the time, he knew it was over $1 million, and he elected not to make a further investigation at that time. There is no evidence – zero – that Summa attempted to deceive anybody or hid anything, or that there is any reason on the grounds of fraud to undo this judgment. All of the questions relating to the amount of the judgment really are disguised attempts to relitigate what Mr. Bagbag now wishes he had not authorized his counsel to agree to, which is a specific number. That is not a sufficient reason to reopen the judgment.

There were also many times during the Hearing where the experience and ability of Mr. Katzner were criticized, which I found inappropriate. While Mr. Katzner's level of experience was criticized, in fact, when I look at his email, he did send the stipulation to his client, he did make clear that it would mean that the debt was still owing, and he did get authorization to sign it. I also found his testimony credible, and I so find, that he discussed the stipulation orally with Mr. Bagbag. In that context, criticisms of his level of experience were really unjustified.

I also have arguments that the stipulation made no sense, but in fact it made perfect sense. The parties agreed to an amount that was due and owing. If Mr. Bagbab thought that the

5

calculations were wrong, he could have looked into it further.  I note that the trustee allowed the

same claim in the bankruptcy case of Mr. Bagbag's company, so that the trustee apparently

found the calculations to be appropriate and did not require further investigation.  As to whether

it made sense to agree to a nondischargeable claim: the evidence at the Hearing included

suggestions of serious accusations of wrongdoing by Mr. Bagbag that apparently had some role

in the early conversion of the Pace case to chapter 7, including allegations that Mr. Bagbag had

provided false invoices to Summa, had made false representations as to the eligibility of certain

accounts receivable for purposes of the Summa financing, and had diverted payments that

constituted Summa's collateral.  I do not even have a denial by Mr. Bagbag of any of those

accusations.  So to argue that the stipulation somehow makes so little sense that I should infer

that it is the product of fraud or lack of authority just does not hold water.

      I therefore rule in favor of Summa and deny the request for relief from the judgment.  We

will enter an order to that effect.

Dated:  New York, New York
       August 1, 2019


                            /s/ **Michael E. Wiles**
                            Honorable Michael E. Wiles
                            United States Bankruptcy Judge