**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                :        **Chapter 7**
                                                     :
**BOAZ BAGBAG,**                                     :        **Case No. 08-12667 (MEW)**
                                                     :
                        Debtor.                      :
-------------------------------------------------------------x
**BOAZ BAGBAG,**                                     :
                                                     :
                        Plaintiff,                   :
                                                     :
        v.                                           :        **Adv. Pro. No. 19-1022 (MEW)**
                                                     :
**SUMMA CAPITAL CORP,**                              :
                                                     :
                        Defendant.                   :
-------------------------------------------------------------x

## DECISION (1) DENYING REQUEST TO IMPOSE SANCTIONS ON DEBTOR'S COUNSEL, AND (2) GRANTING REQUEST TO IMPOSE SANCTIONS ON DEBTOR

On August 21, 2019, Summa Capital Corp. filed a motion seeking sanctions against the

debtor, Boaz Bagbag, and Mr. Bagbag's counsel.  The sanctions motion was filed after the Court

denied Mr. Bagbag's request to vacate a June 10, 2010 Judgment (the "2010 Judgment") that had

been entered against him and in favor of Summa Capital.  For the reasons set forth below, the

request for sanctions against Mr. Bagbag's counsel is denied, but sanctions in the amount of

$10,000 are awarded in favor of Summa Capital Corp. and against Mr. Bagbag individually.

### Background

The 2010 Judgment was entered in settlement of an adversary proceeding that Summa

Capital had pursued against Mr. Bagbag.  Mr. Bagbag's former bankruptcy counsel, on behalf of

Mr. Bagbag, executed a stipulation agreeing that the 2010 Judgment could be entered.  The 2010

Judgment provided that Mr. Bagbag owed Summa Capital the amount of $1,212,062.40 and that

the debt would be excepted from discharge.

Almost nine years later, after Summa Capital made attempts to collect on the 2010 judgment, Mr. Bagbag filed a petition in the New York State court on January 29, 2019 asking for a determination of the amounts he actually owed to Summa Capital. The petition complained that the 2010 Judgment did not properly account for certain pre-judgment recoveries that Summa Capital had obtained; that Summa Capital had also misrepresented the amounts of its post-judgment collections; that Summa Capital had not made reasonable dispositions of collateral; and that the 2010 Judgment had been entered without Mr. Bagbag's knowledge or authorization.

On February 5, 2019 the New York State Supreme Court entered a temporary restraining order that prevented further collection efforts. On February 11, 2019, Summa Capital removed the action to the United States District Court for the Southern District of New York. The action was then assigned to this Court by order dated February 13, 2019.

This Court held a pretrial conference on February 26, 2019. The Court noted that some of the relief that Mr. Bagbag sought amounted to a request that the 2010 Judgment be modified or vacated. More particularly: (a) Mr. Bagbag contended that the amount of the 2010 Judgment (to which his counsel had stipulated) was wrong; and (b) Mr. Bagbag asserted that his former bankruptcy counsel lacked authority to enter into the Stipulation that formed the basis for the entry of the 2010 Judgment. The Court ruled that any request to vacate or modify the 2010 Judgment should be pursued under Rule 9024 of the Federal Rules of Bankruptcy Procedure, which incorporates the provisions of Rule 60 of the Federal Rules of Civil Procedure. The Court also ruled that requests to re-examine the calculations that led to the 2010 Judgment were premature until the Court determined if there were grounds to vacate the parties' Stipulation and to re-open the 2010 Judgment.

Mr. Bagbag filed a letter on March 13, 2019 stating that Mr. Bagbag did not intend to file a motion to remand the removed action to state court but that he did intend to file a motion under Rule 9024 to vacate or to modify the 2010 Judgment. (ECF No. 3.) The Rule 9024 motion was later filed on April 19, 2019. (ECF No. 14). In that motion Mr. Bagbag continued to assert that the amount of the 2010 Judgment had been improperly calculated. He also asserted that he had been represented by inexperienced counsel and that counsel had agreed to the entry of the 2010 Judgment without authority to do so from Mr. Bagbag and without the knowledge of Mr. Bagbag. *Id*. at 4-5, 8-10. In support of these contentions the motion cited to (and adopted) the verified petition that Mr. Bagbag had originally executed and filed in the state court and a separate affidavit that Mr. Bagbag had originally filed in the state court.

The parties conducted discovery, and during that discovery they obtained copies of certain emails that Mr. Bagbag's former counsel had exchanged with Mr. Bagbag just prior to the entry of the 2010 Judgment. One email string (submitted as Exhibit LL at the evidentiary hearing that is described below) showed that in early June 2010 Mr. Bagbag's counsel had forwarded, to Mr. Bagbag, a copy of a similar judgment that had been entered in favor of a different plaintiff, along with a copy of the proposed judgment to be entered against Mr. Bagbag and in favor of Summa Capital. Counsel asked Mr. Bagbag, "[s]hould I agree to the Stip with Summa? It is for over $1 million." Mr. Bagbag responded, "[a]s much as it sealed the case completely." Counsel then explained in a further response that "it will eliminate the likilhood *[sic]* of getting opposition if we move to just dismiss the case again. Of course, you will still owe the money regardless of what happens. Should I move forward with it?" Mr. Bagbag then responded, "yes."

It appears that the foregoing email was turned over in discovery on or about May 7, 2019, though it is unclear just when it came to the attention of Mr. Bagbag's counsel.  In June 2019 Mr. Bagbag's counsel filed a motion seeking permission to amend the pleadings.  The motion papers did not refer to the foregoing email but stated that amendments were needed because new evidence had been discovered.  Before that motion was ruled upon the parties submitted a Joint Pretrial Order as required by this Court's rules.  (ECF No. 42).  During a subsequent hearing Mr. Bagbag's counsel acknowledged that the Joint Pretrial Order incorporated all of the revised allegations that he wished to pursue through the motion to amend the pleadings.  The Court ruled that the matters set forth in the Joint Pretrial Order were deemed to have been raised in the pleadings pursuant to Fed. R. Bankr. P. 7015 and 9014 and Fed R. Civ. P. 15(b)(2), and therefore that the motion seeking permission to amend the pleadings was moot.  (ECF No. 44).

Mr. Bagbag made the following contentions in the Joint Pretrial Order:

- That Mr. Bagbag's counsel in 2010 "had no actual or apparent authority to execute the Summa Stipulation on Debtor's behalf," *id.* ¶ 33;

- That Mr. Bagbag "lacked sufficient understanding of the Summa Stipulation or the Judgment for either to bind him," *id*. ¶ 35;

- That Mr. Bagbag "did not review the final, revised draft Summa Stipulation before [counsel] signed it, nor did Mr. Bagbag authorize its filing," *id.* ¶ 46; and

- That Mr. Bagbag's counsel had given bad advice.  *Id*. ¶¶ 36-45.

The Joint Pretrial Order also included an allegation that the 2010 Judgment had been fraudulently procured.  *Id*. ¶ 51.

On July 30-31, 2020, the Court held an evidentiary hearing.  At the conclusion of the hearing the Court ruled that Mr. Bagbag's counsel had been given actual authority to enter into

the Stipulation and to consent to the entry of the 2010 Judgment.  The Court therefore denied the

Motion to vacate the 2010 Judgment.  A written decision and a separate order were entered on

August 1, 2019. (ECF Nos. 46 & 47).

In its August 1, 2019 Order the Court directed the parties to inform the Court whether

they believed than any other aspect of the adversary proceeding remained to be decided or

whether the proceeding should be closed.  Summa Capital's counsel stated in response that

Summa Capital intended to file a motion seeking sanctions against Mr. Bagbag and also against

Mr. Bagbag's current counsel.  Summa Capital filed such a motion on August 21, 2019 and

amended it on August 26, 2019.  (ECF No. 56 & 57).  The motion listed a host of instances in

which Summa Capital thought that Mr. Bagbag's court filings and contentions had not been

completely accurate.  Mr. Bagbag filed opposition papers, and Summa Capital filed a reply.

On October 16, 2019, the Court held a hearing on the sanctions motion.  At the outset of

the hearing, and under questioning by the Court, Summa Capital narrowed the grounds on which

it sought sanctions.  Summa Capital argued that:

- It was wrongful for Mr. Bagbag and his counsel to file proceedings in the New York

  State Court to pursue relief from the 2010 Judgment, rather than filing such

  proceedings in this Court;

- Counsel should have known that the calculations that formed the basis of the 2010

  Judgment were correct and would not have challenged those calculations if he had

  done more work;

- The emails that were turned over on May 7 (including trial exhibit LL) could and

  should have been discovered earlier through an exercise of due diligence, and could

and should have prevented earlier allegations that the entry of the 2010 Judgment had

not been authorized;

- The motion to amend the pleadings was misleading because: (i) it did not disclose

   what new evidence had been found, and (ii) the relevant emails should not have been

   characterized as "new evidence" since they should have been obtained earlier;

- Although Mr. Bagbag's counsel stated in papers submitted in support of the motion to

   amend that counsel would withdraw the allegation that Mr. Bagbag was unaware of

   the stipulation and judgment in 2010, those allegations remained in the Joint Pretrial

   Order and continued to be pursued at trial; and

- At the evidentiary hearing Mr. Bagbag refused to admit that he had received an email

   "explaining" the stipulation and judgment in 2010.

## **The Applicable Authorities**

Summa Capital has invoked four potential sources of relief.

### A.    **Rule 9011**

Rule 9011 of the Federal Rules of Bankruptcy Procedure states generally that a person

who submits a petition or other document to a court certifies that, among other things:  (a) the

document is not being presented for an improper purpose; (b) the legal claims are warranted by

existing law or by a nonfrivolous argument for the extension, modification or reversal of existing

law; and (c) the factual allegations have evidentiary support or, if specifically identified, are

likely to have evidentiary support after discovery or further investigation.  *See* Fed. R. Bankr. P.

9011.  Sanctions may be sought for violations of Rule 9011, and Summa Capital relied on Rule

9011 in its initial motion papers.  However, Rule 9011 (c) contains a "safe harbor" provision.  It

states that a motion for sanctions may not be filed with the Court unless it is first served on the

targeted person or entity and unless the challenged paper, claim, defense, contention, allegation or denial is not withdrawn or appropriately corrected within 21 days after such service. *Id*. Essentially, Rule 9011(c) provides a chance for atonement. Sanctions may not be sought unless the atonement is not forthcoming.

Rule 9011(c) is strictly applied. *Behrens v. JPMorgan Chase Bank N.A.*, 2019 WL 1437019, at *14 (S.D.N.Y. Mar. 31, 2019) (a motion that fails to comply with Rule 9011(c) must be denied); *In re Resciniti*, 2019 WL 1451278 at *1 (Bankr. E.D.N.Y. Mar. 29, 2019)(Rule 9011(c) is a "strict procedural requirement"). "An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21–day safe harbor period." *McLeod v. Verizon New York, Inc.*, 995 F.Supp.2d 134, (E.D.N.Y. 2014).

In this case, all of the matters about which Summa Capital complains occurred prior to or during the evidentiary hearing that this Court conducted. Mr. Bagbag has correctly noted that Summa Capital did not serve or file its motion for sanctions under Rule 9011 until after the trial had already been completed and after the Court had issued its ruling on the merits – and therefore at a time when it was too late to correct or to withdraw an offending allegation. Summa Capital argued in its reply papers that the Court had established a deadline for the filing of post-trial motions and that this "prevented Summa from providing the twenty-one day 'safe harbor'" under Rule 9011(c). *See* Summa Reply at 2 (ECF No. 64). But Summa Capital misses the point. The deadline for post-trial motions is irrelevant, because Summa Capital should not have treated a Rule 9011 motion as a "post-trial" matter in the first place. Rule 9011(c) contemplates that 21 days' notice will be given at a time when the correction or withdrawal of an offensive contention is still possible. *Cf. In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) (Motions under Fed. R. Civ. P. 11 – upon which Rule 9011 is based – are untimely if filed

too late to permit correction); 2 *Moore's Federal Practice – Civil* ¶ 11.22 (in light of the safe

harbor provision a Rule 11 motion may not be filed after the court has already rejected the

challenged allegations in a ruling on the merits).  Service of a Rule 9011 motion after the Court

has ruled on the merits is too late.

Summa Capital also argued that it had informally advised Mr. Bagbag in January 2019

that his proposed conduct was sanctionable, but even if that were the case such informal advice

would not be enough.  *McLeod v. Verizon New York, Inc.*, 995 F.Supp.2d 134, (E.D.N.Y. 2014).

Accordingly, Summa Capital may not invoke Rule 9011 in support of its request for sanctions.

**B.    22 NYCRR 130-1.1**

Section 130-1.1 of the Official Compilation of Codes, Rules and Regulations of the State

of New York is an analog to Rule 9011.  Section 130-1.1 permits a New York State court to

award costs in the form of reimbursements for actual expenses reasonably incurred and

reasonable attorney's fees resulting from "frivolous conduct."  In lieu of awarding such costs a

New York State court may award financial sanctions upon any party or attorney in a civil action

who engages in "frivolous conduct."  Conduct is "frivolous" if:

> (1) it is completely without merit in law and cannot be supported by a
> reasonable argument for an extension, modification or reversal of existing
> law;

> (2) it is undertaken primarily to delay or prolong the resolution of the
> litigation, or to harass or maliciously injure another; or

> (3) it asserts material factual statements that are false.

*See* 22 NYCRR 130-1.1.

Summa Capital has argued that section 130-1.1 is a substantive part of New York law

that is applicable in the federal courts.  Summa Capital has cited to the decision in *Asesores Y*

*Consejeros Aconsec CIA, S.A. v. Global Emerging Mkts. N. Am., Inc.*, 881 F.Supp. 2d 554, 556

(S.D.N.Y. 2012), which concludes (without discussion) that section 130-1.1 is a substantive rule of New York law that permits fee-shifting in cases in which jurisdiction is based on diversity of citizenship and in which state law (not federal law) governs the relevant cause of action. One subsequent decision has cited the *Asesores* decision with approval, though again without discussion of whether section 130-1.1 should be regarded as a point of substantive law or as a procedural rule. *See Tate v. Levy Rest. Holdings, LLC*, 150 F.Supp. 247 (E.D.N.Y. 2015).

However, section 130-1.1 is a procedural rule that has been adopted by the Chief Administrator of the New York State courts. Most district court decisions – both before and after the *Asesores* decision – have held that section 130-1.1 is a state court procedural rule that is applicable only in the state courts. *See e.g., Purjes v. Plausteiner*, 2017 WL 6055047 at *2 (S.D.N.Y. Sept. 27, 2017) (citing *Asesores* but noting that section 130-1.1 is part of the "Rules of the Chief Administrator of the New York State Courts" that governs judicial administration of the courts, and holding that section 130-1.1 is a procedural rule that is not applicable in federal court); *Spirit Realty, L.P. v. GH&H Mableton*, 227 F.Supp. 3d 291, 302-03 (S.D.N.Y. 2017) (holding that attorneys' fees provisions in procedural rules are procedural in nature, not substantive, and that section 130-1.1 has no application in federal court); *Haque v. Commerce & Indus. Ins. Co.,* No. 11 Civ. 9360, 2013 U.S. Dist. LEXIS 114244 *11 (S.D.N.Y. Aug. 13, 2013) (section 130-1.1 is a procedural rule that does not apply to conduct in a federal court); *Harris v. Coleman*, 863 F.Supp. 2d 336, 345 (S.D.N.Y. 2012) (same); *Jewelers Vigilance Comm., Inc. v. Vitale Inc.*, No. 90 Civ. 1476, 1997 U.S.Dist. LEXIS 14386 *17 (S.D.N.Y. 1997) (same).

The holdings in *Purjes* and its predecessors are more persuasive. The court in *Asesores* treated section 130-1.1 as a "fee-shifting" statute, but a true "fee-shifting" statute is one that defines a substantive claim for which attorneys' fees and expenses may be recovered, without

regard to the ordinary American rule and without regard to the good faith or bad faith of a litigant and its counsel.  If a state's substantive law governs a claim, and if that substantive law provides for fee-shifting, then a federal court may follow that fee-shifting rule.

Section 130-1.1, by contrast, is a procedural rule.  10 *Moore's Federal Practice - Civil* ¶ 54.171 (attorneys' fee provisions that address abuse of process or misconduct during a case are procedural in nature, not substantive).  Section 130-1.1 permits courts to monitor misbehavior that occurs in the cases before them, but an award of fees under section 130-1.1 depends "not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation." *Chambers v. NASCO, Inc.*, 111 S.Ct. 2123, 2137 (1991).

Summa Capital's argument about New York "substantive" law also is self-contradictory. The whole basis for Summa Capital's argument that the proceeding was filed in the wrong court is Summa Capital's contention that none of the issues that Mr. Bagbag sought to pursue were actually governed by New York State law and that no reasonable, non-frivolous argument to the contrary could be made.  But if Summa Capital is right, and if New York's substantive law does not apply to Mr. Bagbag's claims, then even if section 130-1.1 were a substantive part of New York law it would not be applicable here.

Mr. Bagbag initially filed a petition in the state court that was removed to this Court, but once that removal occurred any further proceedings in that matter were governed by federal procedural rules, including Rule 9011.  That includes any motion for sanctions.  Mr. Bagbag also filed a motion under rule 9024 in this Court, and that motion has been governed in its entirety by the federal rules.  A motion under Rule 9011 is foreclosed to Summa Capital for the reasons stated above, and a motion under section 130-1.1 is not proper because section 130-1.1 is a procedural rule that does not apply in this Court.

In its reply papers, Summa Capital nevertheless suggested that this Court inherited the state court's authority to award sanctions under 22 NYCRR 130-1.1 for "frivolous" conduct that may have occurred while the initial petition was still pending in the New York state court.  But again, since section 130-1.1 is just a procedural rule I cannot apply it here.  *See Spirit Realty, L.P. v. GH&H Mableton*, 227 F.Supp. 3d 291, 303 (S.D.N.Y. 2017) (holding that Rule 9011 supplants section 130-1.1 and that Rule 9011(c) bars a request that purports to be based on section 130-1.1).

In any event, it does not matter whether section 130-1.1 is applicable or not.  Even if I had authority to award sanctions under section 130-1.1 for things that happened in the state court, and even if an application for such sanctions were not barred by Summa Capital's failure to comply with the procedural provisions of Rule 9011(c), I have held for the reasons explained below that no sanctions against Mr. Bagbag's counsel would be appropriate based on the filing of the petition in the New York State court or based on things that happened during the period when that petition was pending in the New York State court.  As to Mr. Bagbag, the sanctions that I have awarded below would be the same even if section 130-1.1 or Rule 9011 were applicable.

## C.    The Court's Inherent Authority

A court has the inherent authority to control the conduct of the parties and of the attorneys who appear before it and the power to penalize those who misbehave.  *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017) (confirming that courts have the inherent power to fashion remedies for misconduct, including the issuance of orders directing parties who act in bad faith to reimburse legal fees and costs incurred by another party); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991); *Link v. Wabash R. Co.,* 370 U.S. 626,

630-631 (1962).  Two elements must be met for a court to impose sanctions pursuant to its

inherent power: the "court must find that: (1) the challenged claim was without a colorable basis

and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as

harassment or delay."  *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012); *see

also Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 56 (2d Cir. 2018).  The Court's

inherent authority permits sanctions to be awarded against parties as well as counsel.  *Enmon v.

Prospect Capital Corp.*, 675 F.3d 138, 144 (2d Cir. 2012).  However, any fees and costs awarded

pursuant to this authority must be compensatory (not punitive) and must be limited to fees and

expenses that would not have been incurred in the absence of the misconduct. *Goodyear, supra*,

at 1186; 2 Moore's Fed. Practice – Civil ¶ 11.24[3].

    **D.**    **28 U.S.C. § 1927**

Section 1927 of title 28 of the United States Code punishes conduct that results in

improper delay or excessive and time-wasting procedures.  It states:

> Any attorney or other person admitted to conduct cases in any court of the
> United States or any Territory thereof who so multiplies the proceedings in
> any case unreasonably and vexatiously may be required by the court to
> satisfy personally the excess costs, expenses, and attorneys' fees reasonably
> incurred because of such conduct.

28 U.S.C. § 1927.  Section 1927 addresses dilatory tactics by attorneys.  An award under section

1927 is proper only if an attorney has pursued proceedings without any good faith basis and for a

bad faith purpose – namely, with a purpose to harass or to delay.  *Baker Industries, Inc. v.

Cerberus, Ltd.,* 764 F.2d 204 (3d Cir. 1985).  The showing required under section 1927 is similar

to that necessary to invoke the court's inherent powers.  *Oliveri v. Thompson,* 803 F.2d 1265,

1273 (2d Cir. 1986).  However, section 1927 only permits the court to punish an attorney, not the

party whom the attorney represents.  *See Sassower v. Field,* 973 F.2d 75, 80 (2d Cir. 1992).

Some decisions have held that bankruptcy courts are not "courts of the United States" and therefore that section 1927 is not applicable to proceedings in a bankruptcy court. *See, e.g., Jones v. Bank of Santa Fe (In re Courtesy Inns)*, 40 F.3d 1084 (10th Cir. 1994). Other courts have disagreed. *See, e.g., In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90 (3d Cir. 2008). I have previously ruled in another context that bankruptcy courts are units of the district courts that exercise the powers that district courts otherwise would have in bankruptcy cases, and therefore that the better view is that bankruptcy courts are "courts of the United States" for purposes of the relevant provisions of Title 28. *See Boles v. Collins (In re Collins)*, No. 17-10049 (MEW), 2017 WL 979021, at *2-4 (Bankr. S.D.N.Y. Mar. 10, 2017). I reaffirm that decision here.

### The Court's October 16, 2019 Rulings

The Court expected the parties to provide evidence at the hearing on October 16, 2019, but the parties did not present witnesses and they expressed some confusion as to whether the hearing was intended to be an evidentiary hearing. After hearing extensive arguments based on the trial record and the other proceedings that had been held, however, the Court informed the parties as to how it would rule if it were to make a decision based entirely on the record then before it, while also giving the parties the right to offer further evidence on these points at a further hearing if they wished to do so.

First, the Court stated that that it would deny the request for sanctions based on allegations that the initial petition had been filed in the wrong court. The Court noted that the only expense that was attributable to that alleged wrongdoing was the relatively minor expense of filing a removal petition. The Court also noted that, even if certain of the challenges to the 2010 Judgment should have been made in this Court, a portion of the state court petition had sought relief based on alleged post-judgment collections by Summa Capital. Summa Capital

acknowledged that the 2010 Judgment had been registered in the New York State courts, and the

Court noted that the New York Civil Law and Practice Rules have provisions that permit a party

to seek an accounting as to the amount of a judgment that remains outstanding.  The Court asked

Summa Capital if it could cite state court authorities of which Mr. Bagbag and his counsel

should have been aware that allegedly had made clear that the cited CPLR provisions could not

be invoked to seek the relief that Mr. Bagbag sought, but no such clear authorities were cited.[1]

The Court further noted that the state court entered a temporary restraining order based

on the petition and that the entry of such an order requires a determination of some likelihood of

success on the merits.  *W.T. Grant Co. v. Srogi*, 52 N.Y.2d 496, 517, 438 N.Y.S.2d 761, 420

N.E. 2d 953 (1981) ("[t]o be entitled to temporary injunctive relief, movant must show (1) the

likelihood of success on the merits; (2) irreparable injury absent granting the injunction; and (3)

a balancing of the equities"); N.Y.C.P.L.R. §§ 6301, 6313(a).  The state court therefore did not

treat the invocation of the CPLR, and of the state court's jurisdiction, as conduct that was

frivolous.

While the Court believes that the proper course would have been to file a Rule 9024

motion in this Court to the extent that Mr. Bagbag wished to challenge the 2010 Judgment itself,

the record did not support the contentions (a) that the filing of the petition in the state court

(rather than the federal court) was so utterly unsupported and egregious as to warrant sanctions,

or (b) that it caused sufficient delay or expense to support an award of sanctions.

---

[1]    The Court also noted that by criticizing Mr. Bagbag's counsel for invoking the New York
CPLR Summa Capital appeared to be trying to hold Mr. Bagbag's counsel to a higher
standard than Summa Capital itself had followed when Summa Capital made a request for
an award of sanctions under Rule 9011 notwithstanding the "safe harbor" in Rule 9011(c).
Mr. Bagbag's counsel may have been wrong in invoking the CPLR, just as Summa Capital
may have been wrong in invoking Rule 9011, but neither counsel acted with bad faith or
with the kind of improper purpose that would warrant sanctions.

Second, the Court indicated that the record before it did not support an award of sanctions based on allegations that Mr. Bagbag and his counsel should have had information that confirmed the correctness of the calculations underlying the 2010 Judgment. The Court pointed out that no hearing had been held on that issue and that no evidence had been offered to this Court as to the correctness of the 2010 calculations. The Court held, after trial, that there were no proper grounds on which the 2010 Judgment could be vacated or modified. However, the Court could not award sanctions, based on the contention that it was frivolous (factually) to challenge the 2010 calculations, without any evidence about those calculations and without any evidence that the challenges to the calculations reflected bad faith and an improper purpose. There was no evidence that Mr. Bagbag and his counsel actually did not believe their allegations and no evidence that their belief was frivolous or in bad faith.

Third, the Court stated that the record did not support contentions that Mr. Bagbag's counsel had acted without sufficient due diligence. Summa Capital contended that Mr. Bagbag's counsel could and should have obtained the relevant emails from prior counsel at an earlier time and therefore that the allegations in the original rule 9024 motion should never have been made. However, Summa Capital offered no evidence (a) that prior counsel would have been willing to cooperate, or (b) that prior counsel would have found the relevant emails without the pressure of a discovery request.[2] In addition, counsel is entitled to trust the recollections of his client where those recollections are not inherently suspect, and it is not proper to award sanctions just because an attorney credits a client's recollections.

---

[2]    Ironically, Summa Capital admitted that it had not checked with Mr. Bagbag's former counsel and had done no due diligence before it alleged that Mr. Bagbag's prior counsel would have been willing to turn over the relevant emails at an earlier time. This, then, was just another instance in which Summa Capital sought to hold Mr. Bagbag and his counsel to standards different from those that appeared to govern Summa Capital's own behavior.

Fourth, the Court rejected arguments that Mr. Bagbag's counsel had misled the court when he alleged that the pleadings should be amended based on "new evidence." The gist of Summa Capital's argument was that it was improper to characterize the emails that had been discovered as "new evidence" because those emails allegedly could and should have been obtained earlier. This particular allegation amounts to nothing but nitpicking over semantics. It was clear to the Court that Mr. Bagbag's counsel sought to amend the prior allegations because he had learned of information that he personally did not previously know. There is nothing about that contention that warrants sanctions.

Fifth, the Court ruled that based on the record then before it the Court would not award sanctions against Mr. Bagbag's counsel for stating (in a motion to amend the pleadings) that he would withdraw the allegation that Mr. Bagbag was unaware of the stipulation and judgment in 2010 and then failing to remove those allegations in the Joint Pretrial Order. Counsel made clear at trial and beforehand that counsel had shifted his argument to an "informed consent" argument. The inclusion of the prior allegations in the Joint Pretrial Order, while careless, did not result in extra expense and was not conduct for which sanctions were proper against counsel.

On the other hand, the Court expressed concern about the fact that during his case in chief Mr. Bagbag's counsel had offered an incomplete version of Exhibit LL that had stopped short of the exchange in which counsel had advised Mr. Bagbag that the judgment would be enforceable if he agreed to it and in which Mr. Bagbag had told counsel to go ahead. The Court questioned counsel as to whether the use of the abridged email chain was an effort to hide the full exchange. While counsel's use of the exhibit was certainly ill-advised, the full exhibit was included in a stipulated binder of exhibits, and the Court determined that the behavior was not so egregious or ill-intentioned as to warrant sanctions. It appeared to the Court that Mr. Bagbag's

16

counsel genuinely had attempted to refocus the argument on a contention that "informed consent" had not been given, though his execution of that change may not have been perfect and though (as noted below) he appeared to have been unable completely to control what his own client wished to say on this point.

Sixth, the Court ruled that the "informed consent" arguments that counsel had made at the hearing ultimately did not prevail, but that they were arguments that had been made in good faith and were not so wholly beyond the scope of a good faith request for a modification of existing law as to warrant sanctions.

Seventh, the Court rejected Summa Capital's complaint that at trial Mr. Bagbag had refused to agree when he was asked by Summa Capital's counsel to admit that he had received an email "explaining" the stipulation and the 2010 Judgment. Mr. Bagbag's contention at trial was that certain matters (including the chances of success in obtaining a discharge of the underlying obligation owed to Summa Capital) were not addressed in the email. In that context, his denial that he had received an email "explaining" the stipulation was just a refusal to accept Summa Capital's conclusory characterization of the emails, and was not a sanctionable event.

Eighth, the Court expressed concern about the many allegations that Mr. Bagbag had made, throughout the proceeding, to the effect that he was without knowledge of the entry of the 2010 Judgment and had not authorized its entry. At trial Mr. Bagbag continued to argue that he had not known about the 2010 Judgment until 2018, *see* Tr. 7/30/19 at 35:19-23, even though Exhibit LL should have made clear that he had actually discussed the judgment with counsel and that he had seen a draft of it. Mr. Bagbag also testified that he had not authorized prior counsel to agree to the entry of the 2010 Judgment. (Tr. 7/30/19 at 35:14-16.)

Counsel attempted to argue that Mr. Bagbag had not given an "informed" consent to the entry of the 2010 Judgment, but in his sworn statements both before and after the discovery of Exhibit LL Mr. Bagbag stated that he did not even know of the entry of the 2010 Judgment and that he had not authorized it at all. The Court observed that these sworn statements by Mr. Bagbag (particularly at trial) could not fairly be attributed just to the lapse of time or to a faulty memory. While Mr. Bagbag may believe in hindsight that he did not fully understand the wisdom of the 2010 Judgment or that he received imperfect advice at the time, his denials that he had even known about the judgment, or that he had authorized counsel to proceed, were without colorable basis. Based on the record, and on the Court's assessment of Mr. Bagbag's credibility at trial, the Court also concluded that Mr. Bagbag misrepresented these facts for an improper purpose – namely, to frustrate Summa Capital's collection efforts. In short, Mr. Bagbag had been willing to say (under oath) whatever he felt that he needed to say in order to try to reopen a litigation that he had elected not to pursue many years earlier.

As noted above, the parties had expressed uncertainty as to whether the October 16, 2019 hearing was supposed to be an evidentiary hearing. The Court therefore offered the parties the opportunity to schedule a further hearing to provide evidence on any or all of the above points. The parties immediately declined the invitation to offer any further evidence as to the request for the imposition of sanctions against Mr. Bagbag's current counsel. The Court therefore concluded, based on the record before it, that the motion for sanctions against Mr. Bagbag's counsel was without merit and should be denied.

The Court left open the issue of whether the parties wished to offer further evidence as to the request for sanctions against Mr. Bagbag himself and also as to the amount of sanctions to be awarded. Several weeks passed without further word from the parties, and so on November 15,

2019 the Court issued an additional order setting a deadline of November 21, 2019 to request a further evidentiary hearing. (ECF No. 67).  Neither party requested a further evidentiary hearing. As a result, for the reasons the Court had previously stated, sanctions are appropriate against Mr. Bagbag only with respect to his sworn statements about his knowledge and authorization of the entry of the 2010 Judgment.  The amount of the appropriate sanctions remains to be decided.

### The Parties' Further Submissions

On November 27, 2019, counsel to Summa Capital filed a statement of attorney fees and disbursements incurred for the period between January 11, 2019 and October 30, 2019 (the "Fee Statement").  (ECF No. 69).  Summa Capital asked the Court to award all of the fees and expenses that it had incurred since the filing of the state court petition.  The attachments to the Fee Statement described $89,722.50 of charges incurred for 163.80 hours of work, plus $681.32 of expenses, for a total amount sought of $90,403.82.

On December 13, 2019, Mr. Bagbag filed an opposition to the Fee Statement, arguing that the fee request should be significantly reduced because: (i) counsel to Summa Capital failed to show that the fees were reasonable and necessary, (ii) the fees were inflated, and (iii) certain of the fees sought were for work unrelated to the adversary proceeding. (ECF No. 74).  Counsel for Summa Capital elected not to respond to Mr. Bagbag's opposition.

### Discussion

The applicable federal rules make clear that Summa Capital's motion for an award of attorneys' fees and expenses incurred in the underlying litigation is a proceeding that is collateral to that litigation.  *See* Fed. R. Civ. P. 54; Fed. R. Bankr. P. 7054, 9014.  This Court has the Constitutional power to resolve the collateral issues regarding attorneys' fees for the same reasons that it had the Constitutional power to resolve the underlying litigation.

This is not a case in which attorneys' fees and expenses are to be awarded as a matter of statutory right. Rather the question before the Court is whether Mr. Bagbag engaged in misconduct of a kind that justified the imposition of sanctions and, if so, how much. Section 1927 of title 28 of the United States Code does not permit an award of fees and expenses against a party (as opposed to counsel), and Summa Capital cannot seek an award of fees and expenses against Mr. Bagbag under Rule 9011 or under 22 NYCRR 130-1.1 for the reasons explained above. Accordingly, any sanctions may be awarded only to the extent warranted under an exercise of this Court's inherent powers.[3]

In addition, it is only proper to award fees and expense to the extent that Mr. Bagbag's misstatements required an expenditure of legal time that otherwise would not have been required. *Goodyear, supra*, at 1187 ("The court's fundamental job is to determine whether a given legal fee . . . would or would not have been incurred in the absence of the sanctioned conduct."); 2 Moore's Fed. Practice – Civil ¶ 11.24[3].

I have reviewed the Fee Statement and Mr. Bagbag's opposition. About $17,265 of the fees and expenses were incurred after trial in the pursuit of sanctions and also in efforts to enforce the 2010 Judgment. The case law permits some compensation for the expense incurred in pursuing a sanctions award. *In re Emanuel*, 422 B.R. 453, 467 (Bank. S.D.N.Y. 2010). However, in this case most of the requests for sanctions were based on factual and legal theories that the Court has rejected. I do not believe it is appropriate to provide any compensation for that time, and it is not proper to reimburse Summa Capital for fees and expenses it pursued in trying to collect the sums owed to it.

---

[3]    As noted above, however, my decisions on these points would be the same even if Rule 9011, section 1927 or section 130-1.1 were applicable.

Other fees and expenses were incurred during the course of the litigation. However, most of the time spent on briefing, discovery and trial would have been just as necessary in the pursuit of Mr. Bagbag's "informed consent" arguments, even if the arguments about his alleged lack of knowledge and lack of authorization of the stipulation and judgment had never been made. In addition, some of the time entries submitted by Summa Capital's counsel (such as vague time entries for time allegedly spent at trial) appear to exceed the amount of time actually spent at trial, while others are too general to identify precisely what counsel was doing.

While it is plain to the Court that Mr. Bagbag's misstatements have at least to some extent required separate attention and therefore have magnified the expenses of the proceedings before this Court, it is very difficult to identify, with complete certainty, just how much time falls into that category. But as Justice Kagan has observed, "trial courts need not, and indeed should not, become green-eyeshade accountants" when they consider awards for attorneys' fees and costs. *See Fox v. Vice*, 563 U.S. 826, 838 (2011). The essential goal "is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

I have carefully reviewed the time entries and I have re-reviewed the entire record of the proceedings in this Court in considering Summa Capital's request. I conclude based on my overall familiarity with the case, and my review of the time entries, that an award of $10,000 is a proper sanction for Mr. Bagbag's misconduct in this case. A separate Order to that effect will be entered.

Dated: New York, New York
      March 17, 2020

                           /s/ **Michael E. Wiles**
                           The Honorable Michael E. Wiles
                           United States Bankruptcy Judge